[No. 16970.  Department One.  March 31, 1922.]

JAMES A. P. HENDERSON *et al., Respondents,* v.
ALLEN O. MILLER *et al., Appellants.*[1]

VENDOR AND PURCHASER (63, 160)—RESCISSION BY PURCHASER—RE-
COVERY OF PRICE—FAILURE OF TITLE.  An action lies to recover money
paid and rescind an executory contract for the sale of land, assigned
to the plaintiffs, where a house and other improvements constitut-
ing the principal part of the consideration were not wholly on the
lots, as represented, and the sellers refused to make the title to the
house good or return the money.

Appeal from a judgment of the superior court for
King county, Mills, J., entered July 16, 1921, in favor
of the plaintiffs, in an action for rescission, tried to the
court.  Modified.

*Reynolds, Ballinger & Hutson,* for appellants.
*Chadwick, McMicken, Ramsey & Rupp* and
*Stephen F. Chadwick,* for respondents.

MITCHELL, J.—On April 21, 1919, Allen O. Miller
and wife entered into a written contract with May
Farrell by which they agreed to sell to her lots 10 and
11, block B, of E. F. Beck's Replat of block 72 of
Burke's Second addition to the city of Seattle.  A cash
payment was made and the balance of the purchase
price was to be paid in monthly installments.  Upon
full payment the vendors were to give a good and suf-
ficient warranty deed to the purchaser.  The contract
contained no provision against the right of assignment.
May Farrell and her husband took possession of the
premises, and after making payments in the sum of
$1,355 on and according to the terms of the contract,
assigned their rights and interest under the contract
to James A. P. Henderson and wife on October 20,

[1]Reported in 205 Pac. 1.

1920, in consideration of the sum of $1,250, $105 less than the amount the Millers had already received from the Farrells. The Hendersons then took possession of the property and thereafter made payments according to the terms of the contract in the sum of $237.50, and made improvements on the property.

In April, 1921, upon receiving notice from the owners of the property lying immediately south that the dwelling house on the property in question extended over on the abutting property, the Hendersons caused a survey to be made of their lots, and then discovered for the first time that the house and a part of its foundation or retaining wall encroached on the lot to the south, that the garage was built partly on a public street, and that other small improvements, such as shrubbery and clothesline poles which they supposed were on the property, were not on the lots. On learning that the improvements were partly upon another lot, Henderson asked Miller if he would remedy the situation by buying a small portion of the lot upon which the house and foundation rested, and he answered that he would not. Thereupon, and on April 19, 1921, Henderson and wife executed a quitclaim deed to the property running to Miller and wife and notified them in writing it was necessary for them to rescind the sale. They demanded a return of the money expended by them. The notice further provided that, in the event cancellation was not accepted, suit would be brought to compel it. The Millers refused to make the payments demanded and to accept the quitclaim deed, and thereupon this suit was brought by the Hendersons. The judgment was for the plaintiffs, from which the defendants have appealed.

It is advisable to notice other facts in the case. The property was sold to the Farrells through a real estate

agent representing the owners. He took them to the property twice, and it appears that the owners were there at the time of the second visit. The lots are of an uneven surface and situated on a steep hillside. Much of them was covered at the time with trees and brush. The lots lie east and west. At the west end a public street was somewhat opened only a short distance north from the south line of the lots. The garage was located at the west end of the lots, an appreciable portion of it extending into the street. The residence was so located that its southerly or southeasterly corner and concrete foundation on which it rested extended over on the abutting property, and from thence the house is situated at an angle northwesterly across the lot. There were shrubbery and other small improvements appearing to belong to the property that were, however, outside of the lots. The agent testified that he told Farrell a part of the garage was in the street, while Farrell testified the agent said the approach to the garage was in the street. Neither of them knew where the southwest corner of the lots was, except the agent gave it approximately, and certainly, because of the trees and brush, it could not be seen that any part of the residence was on another lot.

The improvements, of course, as well as the lots were sold to the Farrells. Afterwards the lines of the adjoining lot to the south were run by the owners. Mr. Farrell was absent at that time and his wife, who was present, testified she did not know the property was being surveyed. Testimony on behalf of the appellants shows that, upon Mr. Farrell's return, he was informed by the owner of the adjoining lot that his house was partly on the adjoining lot. He denied this at the trial and claimed he never knew it until after the survey made in April, 1921, for the respondents. The appel-

lant Allen O. Miller admitted at the trial that he had
known for ten years that a portion of the residence
was not on the lots.

There are but three assignments of error and they
may be considered together. It is the contention of the
appellants that, the Farrells having made payments on
the contract after they were advised of the true line
of the property, they thereby waived their right to
rescind the contract, and that, since their contractual
rights gave them no legal title to the property, but a
mere equity, a transfer of that equity by assignment
to the respondents was subject to all existing equities
against the Farrells and in favor of the Millers; that
is to say, respondents were not innocent purchasers
and their right of rescission is no greater than that of
the Farrells at the time of the assignment.

The argument might be accepted as sound if it be
admitted that Farrell knew the condition, which he
denies, and if respondents received only an assignment
of any cause of action the Farrells may have had and
that were the cause of the complaint in this action.
But this suit is not to recover the $1,355 paid by the
Farrells to the appellants, nor to enforce any other
right of action they had. Nor is it an action in which
the respondents are disputing any right, legal or
equitable, prior or superior, existing in favor of a third
party. Nor is it an instance in which the assignees,
respondents, knew as much at the time of the assign-
ment to them as they did at the time of the trial, as
was the case in *Cooper v. Hillsboro Garden Tracts,* 78
Ore. 74, 152 Pac. 488, Ann. Cas. 1917E 840, relied on
by the appellants. It is an action to recover what the
respondents have paid out, and has been brought be-
cause appellants repudiated their contract in their
dealings with the respondents. They disaffirmed

promptly when they ascertained that the appellants could not perform and declared they had no intention of performing. The contract contained no prohibition or limitation against assignment. It was duly assigned to the respondents, to whom the appellants thereby became directly obligated to make a good and sufficient warranty deed when they had received full payment of the purchase price. After they became so obligated to the respondents, they received payment from them according to the terms of the contract. The obligation with the respondents was that they, the appellants, would convey a good title to the improvements as well as to the land. It was this they had represented they were selling and the possession of which was delivered and passed by the assignment into the possession of the respondents. While the testimony is not specific in that respect, it is apparent that the improvements, especially the house, constituted the principal part of the total value of the property. The respondents were occupying the dwelling at the very time the appellants received payments from them.

We need not speak of or discuss the rule as to executed contracts of sale of real estate, but only those which are executory. "It is very generally held that executory contracts for the sale and purchase of real estate may be rescinded by a suit in equity, either on account of fraud or misrepresentation entering into the execution of the contract, or where it becomes apparent that the vendor is and will continue to be unable, or has failed, to comply with his contract." *French v. C. D. & E. Investment Co.*, 114 Wash. 416, 195 Pac. 521; 27 R. C. L. § 377, p. 623.

But this case is more than that, if possible, in favor of the respondents, and all suggestion or thought of actual fraud on the part of the appellants may be

waived. The almost universal holding of the courts is that the fact that a vendor in a contract for the sale of land is not the owner thereof at the time of making the contract is not of itself ground for rescission on the part of the purchaser. It is a question of his conveying the title or having it conveyed to a purchaser when the time of performance comes. *Webb v. Stephenson*, 11 Wash. 342, 39 Pac. 952; *Morris v. Columbia Canal Co.*, 75 Wash. 483, 135 Pac. 238. As if recognizing this rule of fair dealing and proposing to act in the same manner, the respondents, upon learning of the situation here, promptly spoke to appellants about the title to the dwelling, and were told by the appellants that they didn't intend to make the title good, and upon being brought into court they do not deny that the title is defective, nor claim that they can or will make it good.

The case is one in which appellants agreed to sell something the title to which they did not and do not have and which, prior to suit, they declared they would not get for their vendees. They have positively repudiated their solemn contract and we see no escape from the conclusion that the respondents are entitled to recover.

However, upon a consideration of all the facts in the case, we are of the opinion that the judgment should not include $12 on account of the cost of shrubbery planted beyond what was plainly the boundaries of the lot, nor the sum of $15 spent by the respondents for a survey of the property. In all other respects the judgment is affirmed. Remanded with directions to the superior court to modify the judgment as suggested. Respondents will recover their costs.

PARKER, C. J., BRIDGES, FULLERTON, and TOLMAN, JJ., concur.