[No. 17921. Department Two. August 24, 1923.]

WILLIAM H. MAST *et al., Respondents,* v. ELIZABETH H. HOOVER, *Appellant.*[1]

VENDOR AND PURCHASER (63)—RESCISSION BY PURCHASER—DEFECT OF TITLE—MATERIALITY OF PART—REMEDY IN DAMAGES. The purchaser of a quarter section and other small tracts cannot rescind the sale for failure of title to one and one-third acres, on the ground that it materially affected the value and reasonable enjoyment of the remainder, where it appears that the small tracts were but separated links in a roadway which as a whole was but permissive in any event, so that, with the tracts in question, there would be no legal right of way for which the tracts were intended and which was their only use.

SAME (161)—RECOVERY OF PURCHASE MONEY—PARTIAL FAILURE OF TITLE. Upon the failure of title to one and one-third acres of a large tract of land, a deduction of $200 is not unwarranted, where such land in that locality was worth $150 per acre.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered January 11, 1923, upon findings in favor of the plaintiff, in an action for rescission, tried to the court. Reversed.

*Boyle & Boyle,* for appellant.
*Stephen E. Chaffee,* for respondents.

TOLMAN, J.—In August, 1919, appellant, defendant below, being the owner of the southeast quarter of section 7, township 8 north, range 23 east, Willamette Meridian, in Yakima county, and some small fractions adjacent thereto, entered into a written contract with the respondents Mast and wife, for the sale of the land to them. The purchase price was $18,000, of which $1,000 was paid in cash, and the balance was payable in deferred installments, with a provision that when

[1]Reported in 217 Pac. 718.

the principal was reduced to $11,000 appellant would convey by warranty deed and take back a mortgage to secure the payment of the remainder. Mast and wife went into possession, sold 5¼ acres of the land covered by the contract, the purchase money for which was applied on the contract, and later found a purchaser for the remainder of the land. They thereupon tendered payment of the unpaid purchase price in excess of $11,000, tendered a properly executed mortgage to secure the payment of the $11,000, in accordance with the terms of the contract, and demanded a warranty deed which would convey fee simple title to all of the land described in the contract, except the 5¼ acre tract which had previously been conveyed. It then developed that appellant's title, if any she had, to a small fraction, less than one and one-third acres in extent, was defective. Appellant having failed to make her title good in this respect, and to convey in accordance with the terms of the contract, this action was brought to rescind the contract and recover the purchase money already paid, and to recover money expended in payment of taxes, water charges, and the like. From a judgment rescinding the contract, awarding Mast and wife $1,870.31, and awarding to the respondent bank $5,760.67 advanced by it for which it held an assignment of the contract as security, the defendant has appealed.

It seems to be conceded that respondents have complied, or have tendered sufficient compliance with the terms of the contract on their part; and the affirmative defenses of mutual mistake in the terms of the contract warranting reformation, title to the fractional tracts by adverse possession, that the road across these tracts is established by prescription, and that the failure of title, if there be failure, is to but an immaterial portion

of the whole, which does not affect the value and reasonable enjoyment of the remainder for the purposes intended, and that there can be compensation in damages therefor, hence the purchaser may not rescind, supply the real issues.

The conclusion we have reached upon the last question makes it unnecessary to discuss the others further than to say that the evidence does not justify a holding that any one of them has been sufficiently established to be available as a defense here.

A proper understanding of the question upon which the case turns requires a further statement of the facts. The main body of the land described in the contract was the southeast quarter of the section, used and operated as a farm. There is a public road leading to the town of Mabton running along the south line of this quarter section, which is improved and open for travel. There is another public road running along the east line of the quarter from the point where the United States reclamation canal intersects that line, north, connected with roads which lead to Mabton, but it is doubtful if this road is as yet sufficiently improved to be a practical outlet. The United States reclamation service canal enters the section not far from the quarter corner on the west line, running in a generally southeastern direction. Crossing the half section line soon after entering the section, it makes two distinct loops to the south of the north line of the northwest quarter of the southwest quarter of the section, thus leaving two small disconnected tracts between the right of way of the canal and the north line of the northwest quarter of the southwest quarter of the section, as shown in red on the plat here reproduced.

S. 7,-T. 8 N., R. 23, E.W. M.

These tracts are covered by the contract in question, and are therein described as, "also all that part of the northwest quarter of the southwest quarter of section 7, township 8 north, range 23 east, Willamette Meridian, lying north of the United States reclamation canal known as the Mabton Lateral."

It seems to be admitted that there has been a permissive use of the right of way of the canal for road purposes; that the main purpose of the appellant when she attempted to acquire title to these two tracts was to use the same as a part of a roadway along the canal leading from the southeast quarter of the section to the

road to Mabton indicated on the plat along the west line of the northwest quarter of the section. There is evidence indicating that the banks of the canal around these loops do not make a practical roadway, and for practical purposes it is necessary, or at least desirable, that the road otherwise following the canal should cut across these tracts. These tracts are referred to by the witnesses as the "acre and a quarter tracts," and the record shows that, by actual survey, the two tracts contain 1.31 acres only.

It is respondents' contention that they purchased having in view the right to use this roadway along the right of way of the canal and across these tracts as a means of ingress and egress to and from the southeast quarter, and, if title to such roadway fails, the value of the land as a whole is thereby greatly affected. It may be conceded that such a roadway shortens the distance to their market, and would be of some value if it existed; but the fallacy of their position lies in the fact that, even with absolute title to these tracts, their use of the roadway would be permissive only, and might be terminated at any time. These tracts do not connect with each other, and at best form only links in a chain which does not in fact exist. While it may be true that the reclamation service has never objected to a proper use of the right of way in question as a roadway, yet no one disputes that the right and power to prohibit such use exists and may be exercised at any time, or that as against the government no rights can be established by user. So that, even if the roadway be material to the proper use and enjoyment of the main tract, these small tracts are still not material because with them or without them no such roadway can be claimed as a matter of right.

It was, of course, perfectly obvious that the vendor

did not contract to pass title to a roadway leading from the quarter section to the public road on the west line of the section, and no misrepresentation or fraud on the part of appellant as vendor is suggested or claimed. Therefore, the vendees purchased with full knowledge, and cannot now be heard to say that, had they known of the lack of good title to these small tracts, they would not have purchased the farm proper.

We think these facts call for the application of the apparently well settled rule laid down in 39 Cyc. 1408, as follows:

"If the part to which the failure of title appertains is small or inconsiderable in comparison with the whole, and does not affect the value and reasonable enjoyment of the remainder for the purposes for which it was intended, and is susceptible of compensation, the purchaser will not be permitted to rescind, although he will be entitled to a proportionate abatement from the price."

This text is well supported by authority. Among the cases which have laid down the rule may be cited the following: *Kelly v. Brower,* 7 N. Y. Supp. 752; *Key v. Jennings,* 66 Mo. 356; *McCourt v. Johns,* 33 Ore. 361, 53 Pac. 601; *Steinbach v. Hill,* 25 Mich. 77; *Towner v. Tickner,* 112 Ill. 217; *McDunn v. City of Des Moines,* 34 Iowa 467.

Nor do we find that our own decisions upon which respondents seem to rely, in anywise impeach this rule. The cases of *Miller v. Calvin Philips & Co.,* 44 Wash. 226, 87 Pac. 264; *Hoffman v. Titlow,* 48 Wash. 80, 92 Pac. 888; *Sutthoff v. Maruca,* 57 Wash. 102, 106 Pac. 632; *M'Whorter v. Forney Brothers & Co.,* 69 Wash. 414, 125 Pac. 164; *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968, and *Henderson v. Miller,* 119 Wash. 362, 205 Pac. 1, are all clearly distinguishable on the

facts, and none of them presented a situation such as to even invite a contention that the rule should be applied.

It remains, then, only to ascertain what compensation respondents should receive for this immaterial shortage. There is considerable evidence in the case to the effect that these small tracts are practically valueless, being without water, and water rights not being obtainable for such a small area. There is other evidence to the effect that unimproved land in that locality is worth $150 per acre, and since the purchaser should be allowed the full value for any and all purposes, we conclude that an allowance of $200 is not unwarranted.

The judgment appealed from is reversed, with directions to enter a judgment denying respondents any relief save only a diminution of the purchase price to the extent of $200.

MAIN, C. J., FULLERTON, PARKER, and PEMBERTON, JJ., concur.