[No. 22179. Department One. April 3, 1930.]

FRANK M. STANLEY *et al., Appellants,* v. REGINALD H.
PARSONS *et al., Respondents.*[1]

*S. H. Kelleran,* for appellants.
*Herr, Bayley, Croson & Innis,* for respondents.

[1]Reported in 286 Pac. 654.

TOLMAN, J.—Appellants, as plaintiffs, sued for damages alleged to have been sustained through an exchange of real estate, averring in their complaint that they were to receive certain farm lands in Okanogan county, Washington, which, according to the written exchange contract, were to be conveyed to them by "good and marketable title." It is further alleged:

"That thereafter and in partial compliance with their said contract, schedule 'A' hereto, and on or about the 15th day of April, 1926, at Seattle, Washington, the said defendants made, executed and delivered to the plaintiff, F. M. Stanley, acting in that behalf for the community composed of himself and wife, their statutory warranty deed describing the said real property, which deed was thereafter filed for record in the office of the auditor of Okanogan county on the 26th day of June, 1926, and is there of record in volume 62 of records of deeds of said county, on page 279; that copy of said warranty deed is hereto attached, marked schedule 'B' and by reference made a part hereof.

"That at the time of the execution and delivery to these plaintiffs of said schedule 'B,' the abstracts of title to the said real property had not yet been furnished by the defendants to the plaintiffs and were, as these plaintiffs are informed and believe and therefore, allege, still in process of being made up or continued and were in Okanogan county, and that said deed, schedule 'B' hereto, was accepted by the plaintiffs in reliance upon assurances and representations then made by the defendants through their representatives thereunto authorized that the title was good and marketable, . . ."

Then follow allegations to the effect that the deed did not convey a "good and marketable title" and other averments as the basis for the recovery of special damages. The prayer is for damages in an amount exceeding $32,000.

The cause was tried to the court sitting without a

jury. At the close of plaintiff's case, the defendants challenged the sufficiency of the evidence and moved for judgment with prejudice, which motion was granted, and from the judgment of dismissal with prejudice which followed, the plaintiffs have appealed.

From the testimony it appears that, on the date agreed upon for the closing of the transaction, the conditions, known to both parties, were such that it was imperative that the deal be then consummated. The abstracts of title to the Okanogan county lands had not yet arrived and appellants knew nothing of the condition of the record title. The attorney then present representing the respondents (they not being personally present), with full knowledge of the rights of appellants under the contract to have furnished to them abstracts showing marketable title with a reasonable time for examination, and for the purpose of inducing them to close the transaction at that time without the knowledge that an examination of the abstracts would have revealed, orally guaranteed on behalf of respondents that the deed would convey marketable title, and in reliance thereon the deed was accepted.

The abstracts were delivered to the appellants some ten days after the delivery of the deed, but apparently appellants made no attempt to then examine them, but proceeded upon the theory that marketable title was vested in them by the deed from respondents. About six weeks after the delivery of the deed to them, they entered into a contract to convey the Okanogan county lands to one Steward. The abstracts were then apparently turned over to Steward, who raised objections to the record title. The sale to Steward was lost, and out of that transaction grew the case of *Scott v. Stanley*, 149 Wash. 29, 270 Pac. 110, in which this court held that this particular deed from respondents to appel-

lant Stanley did not convey a marketable title of record to all of the lands in it described. Both parties now accept that holding as final.

Subject to objections, appellants produced testimony showing a final disposition of the Okanogan county lands by them to one Wood for a considerably less consideration than they would have received if the Steward deal had been carried through.

It inferentially appears and seems to be now admitted in this court that Wood thereafter, by a suit to quiet title, obtained a decree establishing marketable title in him. Appellants do not contend that the Parsons deed did not convey a good title by adverse possession, and do not deny that by proof *de hors* the record they could have, as Wood did, established a marketable title in themselves.

This record seems to raise two major questions: First, Have the appellants by their allegations and proof established any cause of action at all? and, second, If so, what is the measure of their damages?

Upon the first question, respondents strenuously contend that the executory contract became merged in the warranty deed, which deed, being statutory in form, warranted only (1) that the grantors were seized of an indefeasible estate in fee simple and had good right to convey; (2) that the lands were free from incumbrances (except as stated); and (3) that peaceable possession and defense against all lawful claims of superior title was warranted. Rem. Comp. Stat., § 10552. Nothing in the complaint nor in the evidence indicates a breach of any of these conditions, hence they say no cause of action exists.

As a general proposition, that is no doubt a correct statement of the law, but respondents admit that, if fraud is pleaded and proved, that alters the situation because fraud always vitiates.

"As a general rule evidence of contemporaneous or antecedent agreements between the parties is inadmissible to vary or contradict the terms of a deed. And where an executory contract is carried out by a conveyance which is accepted by the purchaser, this, in the absence of fraud, accident or mistake, operates as a satisfaction and discharge of the executory contract, and regulates the rights and liabilities of the parties; and if the deed is tendered by the vendor as a full performance of the contract it is immaterial that the purchaser protested against accepting it as such. This is so though the deed thus accepted varies from that stipulated for in the contract. And though the lands embraced in the deed are not the identical lands described in the agreement, yet in the absence of evidence of mistake, misrepresentation or fraud, if the purchaser accepts the conveyance, the agreement to convey is discharged." 27 R. C. L. 529, § 260.

Was fraud pleaded and proved? The complaint does not use the word "fraud," but we think, liberally construed, as our rules require, and aided by the testimony, it may be said to be sufficient in that respect. Appellants had a contract which called for the delivery of a marketable title. Through no fault of theirs, they were prevented from examining the abstract prior to the acceptance of the deed. They were induced by representations honestly made, no doubt, but in fact, untrue, to believe that the offered deed would convey the marketable title contracted for. They relied upon those representations and accepted the deed only to later learn that it did not vest marketable title in them. In other words, by the representations complained of, appellants were induced ignorantly to accept less than they were entitled to receive in the belief that they were getting all that they had contracted to take. It can hardly be contended from this record that, if the true facts had been known, appellants would have waived their rights under the contract and ac-

cepted a lesser title than the respondents were bound by the contract to give them.

We think this must be held to be fraud, constructive fraud, perhaps, because the grantors believed that which they represented and had no actual fraudulent intent, but in the eyes of the law the results to the injured party being the same, the right to relief must also be the same. *Bradford v. Adams,* 73 Wash. 17, 131 Pac. 449, and authorities there cited. *Pratt v. Thompson,* 133 Wash. 218, 233 Pac. 637.

We conclude that there is here a cause of action upon the theory of misrepresentations and constructive fraud.

▮ No less difficult is the question of the measure of damages to be applied. We are clearly convinced that the loss by reason of the failure to complete the sale to Steward is not the measure:

(a) Because real estate is not merchandise to be sold over the counter, or machinery, or material to be used for a known specific purpose, and, even though the grantors may have known that the grantee was a trader or intended to make an early re-sale, if possible, yet from the nature of the case the possible profits of a re-sale could not properly be said to be within the contemplation of the parties; but we do not rest our decision upon this point.

(b) This record does not convince us that Steward could not have been held to his contract by reason of the alternative clause permitting the furnishing of title insurance instead of abstracts, but neither do we rest our decision upon this thought.

(c) The completed abstracts came into the possession of the appellants about April 25 and the contract with Steward was not made until May 22, following. Surely it was the duty of appellants, when the abstracts were received, to acquaint themselves with the

nature and extent of the title then vested in them; and that they failed, without excuse, to do so, and blindly contracted to give Steward a title which they did not possess, was so far the result of their own negligence, and so far contributed to the results, as to prevent them from charging the loss to their grantors.

Upon this ground we confidently rest our holding that the special damages claimed, by reason of the loss of the profit of the sale to Steward, are not recoverable. The costs and expenses incurred in the Steward deal are of course governed by the same rule.

Appellants seem to admit that the true measure of damages to be here applied is the difference, if any, between the value of the land with the title as it was and what that value would have been if the title had been as represented, but seemed to have difficulty in properly applying that principle. We think that the principle just stated is right and its application not difficult. *Williams v. Hewitt,* 57 Wash. 62, 106 Pac. 496, 135 Am. St. 971.

If appellants had examined the abstracts when received ten days after the delivery of the deed to them, they would have then been in a position to learn all of the facts affecting the situation, and would have known that a suit to quiet title would have resulted in making their title marketable. The land, therefore, was then worth just so much less as it would have taken in time, money and effort to thus perfect the title, and that must be the measure of damages in this case. One desiring to buy, but not compelled to do so, would have been satisfied with such a reduction of the purchase price as would make him whole in perfecting the title, and one desiring to sell, but not compelled to do so, would cheerfully credit on the purchase price such a sum as he must otherwise himself expend for the same purpose.

224

■ True, appellants offered no direct evidence along this line to show the amount of damages, but it was shown that the purchaser Wood so quieted the title; and we know, as a matter of common knowledge, that such an action involves the expenditure of time, effort and money. The amount of the fixed court costs we can take judicial notice of, and therefore there was something shown to be recoverable and the action should not have been dismissed.

Our theory of the case so differs from that presented by either party that it would be a waste of time to discuss other theories and analyze the authorities cited in support of them. It is sufficient to say that we have carefully examined all of the authorities cited, and find none which is opposed to the views here expressed except a case or two from other states which seem to distinguish between actual and constructive fraud in such a case as this. In view of our own decisions already cited, we are not disposed to reexamine that question.

We conclude that the action was erroneously dismissed and the judgment is reversed with directions to try out the question of the amount of damages on the theory herein outlined.

MITCHELL, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.