[No. 23073. *En Banc.* October 31, 1931.]

W. E. FOLTZ *et al., Respondents,* v. W. A. MANSON, *Appellant.*[1]

[1]Reported in 4 P. (2d) 509.

*R. M. Smith,* for appellant.

*A. H. Denman,* for respondents.

PARKER, J.—On April 14, 1923, the plaintiffs, Foltz and wife, entered into a contract with the defendant, Manson, for the sale by them to him of lot 8 in block 5 of Cavender and Wallace's Addition to Fern Hill, in Pierce county, for the agreed purchase price of two thousand dollars. Manson then entered into the actual, physical possession of the lot and then paid two hundred dollars on the agreed purchase price, it being agreed that the balance thereof be paid by him in monthly installments of twenty-five dollars each, and that Foltz and wife should have, at their election, the right to forfeiture of all rights of Manson under the contract upon his default in making the payments or any of them. In June, 1930, Foltz and wife, claiming Manson to be in default in making payments as agreed, commenced this action in the superior court for Pierce county praying for relief as follows:

"WHEREFORE plaintiffs pray for judgment against defendant

"1st. To determine the amounts due from defendant to plaintiffs pursuant to said contract;

"2nd. That defendant be required to pay the amount so found due to plaintiffs, and in default thereof, said agreement and all claims of the defendant

thereunder be forfeited, cancelled and held for naught and plaintiffs be awarded immediate possession of said real estate."

Manson's defense is wholly affirmative, and consists of his claim that he has been compelled to incur expense in defending an action commenced and unsuccessfully prosecuted against him in the superior court for Pierce county by one Doyle seeking recovery from him of land three feet in width adjudged by the court to be a part of lot 8, which was claimed by Doyle to be a part of lot 9 adjoining lot 8 upon the south; and that he is therefore entitled to have the amount of the expense so incurred by him credited upon the unpaid installments due upon the contract; which amount, if so credited, he claims, would save his rights under the contract from forfeiture.

The cause proceeded to trial in the superior court sitting without a jury, resulting in the court, on November 1, 1930, making findings of fact upon which judgment was rendered, so far as need be here noticed, as follows:

"It is ACCORDINGLY ORDERED, ADJUDGED AND DECREED that there is due and owing to the plaintiffs from the defendant to October 20, 1930, upon the agreement set forth in plaintiffs' complaint the sum of four hundred dollars, and that defendant make payment thereof to plaintiffs or to the clerk of this court for the plaintiffs on or before the first day of December, 1930.

"It is FURTHER ADJUDGED AND DECREED that in the event of the failure of defendant to make such payment within said time that said agreement be null and void, and all rights of the defendant therein, or derived from said agreement, shall cease and determine, and the premises described in said agreement and hereinafter described shall revert to and revest in plaintiffs as absolutely and perfectly as if said agreement had never been made."

From this disposition of the cause in the superior court, Manson has appealed to this court.

The evidence has not been brought here by certified statement of facts, so we must presume that the facts as stated in the court's findings are supported by the evidence. Omitting the usual formal recitals, we quote the whole of the findings:

"(1) That plaintiffs as vendors, and defendant as purchaser of the real estate in Pierce county, state of Washington, described as lot eight in block five according to the plat of 'Cavender and Wallace's Addition to Fern Hill,' recorded in the office of the auditor of said county, entered into an agreement in writing, bearing date April 14, 1923, whereby the said purchaser agreed to pay said vendors the sum of two thousand dollars and interest thereon at the rate of seven per cent per annum in consideration of the conveyance of said real estate to defendant by deed containing the usual covenants of warranty, upon said payment being fully made.

"(2) That said agreement provided that the purchaser should make an initial payment of two hundred dollars and make payment of the remainder in amounts of not less than twenty-five dollars on or before the twentieth day of each month commencing with May, 1923, and continue the same until remaining principal and interest were fully paid.

"(3) That defendant has made said initial payment and all monthly payments required by the terms of said agreement to and including the payment of June, 1929, but has wholly failed to make the payment of twenty-five dollars that came due July 20, 1929, and failed to make any of the payments subsequent thereto required by the terms of said agreement.

"(4) That the amount due to plaintiffs from defendant and unpaid on said agreement, to and including the payment required for October 20, 1930, is the sum of four hundred dollars.

"(4½) That said agreement provides that if the purchaser make default in any of the covenants therein contained or fail to make the payments aforesaid, or

any of them, punctually and upon the strict terms without any failure or default, the times of payment being declared to be the essence of said agreement, then the vendors shall have the right to declare said agreement null and void, and in such case, all the rights and interests thereby created or then existing in favor of the purchaser or derived under said agreement, shall utterly cease and determine, and the premises aforesaid shall revert to and revest in the vendors without any declaration of forfeiture, or act of re-entry, or without any other act by the vendors to be performed, and without any right of the purchaser to reclamation or compensation for money paid or improvements made, as absolutely, fully and perfectly as if said agreement had never been made.

"(5) That plaintiffs by their attorney on May 28, 1930, mailed to defendant a written notice requiring him within a reasonable time, to-wit, on or before June 10, 1930, to pay the sum of two hundred and seventy-five dollars that was then due by the terms of said agreement or that said agreement would then be deemed forfeited and void; that defendant has wholly failed to make any of the payments overdue since June 26, 1929.

"(6) That defendant went into possession of said real estate on or about April 14, 1923, and has had ever since the use and occupation thereof, for more than five years wholly unquestioned and undisturbed; that defendant has ever since maintained his occupancy of the entire premises and has never been dispossessed of any part thereof, and continues to hold the same and every part thereof as delivered to him by plaintiffs.

"(7) That in the month of June, 1928, more than five years after defendant had occupied said real estate, one Joseph Doyle, claiming to own land abutting on the south boundary line of said lot eight, claimed that defendant's occupancy included a strip three feet wide and formed part of Doyle's property; that said Doyle brought action in this court to recover such three feet strip; that plaintiffs were not made parties to such action, and the plaintiff Linnie M.

Foltz refused to defend the same and left the defense thereof to the defendant.

"(8) That defendant prevailed in the action brought by said Doyle, and this court on June 8, 1929, rendered judgment therein providing that said strip was a part of said lot eight, and that the defendant William A. Manson had the right of possession and occupancy of the same as a part of the real estate he was purchasing from the plaintiffs pursuant to said agreement.

"(9) That the costs and expenses incurred by defendant in so defending the possession which plaintiffs had given him were not caused by any defect in the title which the vendors agreed to convey, and defendant has not been occasioned any loss by the assertion of any lawful claims made against plaintiffs."

By the terms of the contract, a concededly correct copy thereof being attached to the complaint, Foltz and wife agree that, upon full payment of the purchase price by Manson, they will execute a deed conveying to him "said premises in fee simple, with the usual covenants of warranty."

If it be a fact, as found by the trial court, as we must assume it to be in the absence of a statement of facts bringing the evidence here, that it was adjudged, in the action which was unsuccessfully prosecuted by Doyle against Manson, that the strip there in question is a part of lot 8 under contract of sale from Foltz and wife to Manson, then it seems plain that Doyle was not lawfully claiming that strip off the southerly part of lot 8. We have noticed that conveyance by Foltz and wife, to be given to Manson upon payment of the whole of the contract purchase price, was to be "with usual covenants of warranty." This, we think, means those covenants recited in Rem. Comp. Stat., § 10552, which section reads as follows:

"Warranty deeds for the conveyance of land may be substantially in the following form:

"The grantor (here insert the name or names and place of residence), for and in consideration of (here

insert consideration), in hand paid, convey and warrant to (here insert the grantee's name or names) the following described real estate (here insert description), situate in the county of................................, state of Washington.

"Dated this......................day of........................, 18.........
.............................   ........................(Seal).

"Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a conveyance in fee simple to the grantee, his heirs and assigns, with covenants on the part of the grantee:

"(1) That at the time of the making and delivery of such deed he was lawfully seised of an indefeasible estate in fee simple in and to the premises therein described, and had good right and full power to convey the same;

"(2) That the same were then free from all encumbrances; and

"(3) That he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same; and such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at full length in such deed."

We think there is none of these covenants here in question other than the covenant to "defend the title thereto [to lot 8] against all persons who may lawfully claim the same." In *Hoffman v. Dickson,* 65 Wash. 556, 118 Pac. 737, Ann. Cas. 1913B 869, 39 L. R. A. (N. S.) 67, wherein an alleged breach of a covenant of substantially this same import was drawn in question, we said:

"We have seen that the defendants only agreed to warrant and defend the title 'against all lawful claims.' We have also seen that the claim of lien, made against the plaintiffs in the suit in which they incurred these expenses, was not a lawful claim against the plaintiffs' title. Under such circumstances, the rule seems to be well settled that no recovery can be had against the grantor upon his covenant of warranty. Indeed, it

seems inconceivable that the unsuccessful assertion of an unlawful claim should constitute a breach of a covenant of warranty to defend against *lawful claims.* We find in the case of *Smith v. Parsons,* 33 W. Va. 644, 11 S. E. 68, remarks of the court peculiarly applicable to this state of facts, as follows:

" 'It is true that Smith, in his sale to Parsons, stipulated for a conveyance with general warranty, but the ejectment resulted in favor of the title sold by Smith, and showed that it was the paramount title. A covenant of general warranty is not broken until there is an eviction under a paramount title, or what is equivalent. *Rex v. Creel,* 22 W. Va. 373; 2 Minor, Inst. 643; 2 Lomax, Dig. 355; 2 Rob. Pr. (New) 87; 2 Suth. Dam. 279; Rawle, Cov. Secs. 127, 131; *Yancey v. Lewis,* 4 Hen. & M. 390. Why then should Smith pay costs expended in defending this action? He sold a good and valid title, as shown by the result of the action of ejectment, and did no wrong in so doing, and by no reasonable view can it be claimed that he was to stand good for expenses in defense of assaults by inferior title. He did not warrant that no one should ever sue Parsons for the land, or in any manner bind himself to refund expenses incurred in defending the land against any one who might think he had a valid claim to the land, and bring a suit for it. Had Parsons lost the land, then Smith, upon his covenant, would have been bound for the land lost, and costs expended in an unsuccessful defense of the title. *Threlkeld v. Fitzhugh,* 2 Leigh 451; 2 Suth. Dam. 302; Rawle, Cov. Sec. 197. But the covenantee is clearly not entitled to demand of the covenantor expenses in defending a suit which sustains the title as valid, for the covenant does not bind for any outlays necessitated by the simple existence or assertion of an adverse claim. The covenant does not protect against any but lawful claims, which negative the title that the deed purports to convey.'

"See, also, *Norton v. Schmucker,* 83 Tex. 212, 18 S. W. 720; *West v. Masson,* 67 Cal. 169, 7 Pac. 452; *Rittmaster v. Richner,* 14 Colo. App. 361, 60 Pac. 189. No decisions have come to our attention holding contrary to this view, and we think there are none such."

Our later decision in *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654, may seem somewhat out of harmony with our decision in *Hoffman v. Dickson;* but that decision involved an element of fraud wholly absent from our present inquiry. Here, there is not shown to have been any misrepresentation or fraud of any nature on the part of Foltz and wife, or even that Doyle made any claim to any portion of lot 8 until some five years after they had contracted with Manson for the sale of it to him and placed him in possession thereof.

We are of the opinion that the unlawful claim made by Doyle to a portion of lot 8 was not such a claim or threat against the title to the lot or to Manson's possession thereof as Foltz and wife were obligated to defend; and that therefore they are not liable to Manson for expense incurred by him in his defense of the action unsuccessfully prosecuted against him by Doyle. See note in 61 A. L. R. 169.

It is contended in behalf of Manson that the trial court erred in overruling his demurrer to the complaint, in that it improperly joined two causes of action. The argument seems to proceed upon the theory that the complaint sets up two inconsistent causes of action. The complaint, it may be conceded, states facts which would entitle Foltz and wife to recover the matured, unpaid installments of the contract, and also states facts which would entitle Foltz and wife to have the rights of Manson under the contract forfeited. But, reading the allegations of the complaint in their manifest intended relation to each other and in connection with the alternative prayer for relief, it is manifest that Foltz and wife did not thereby seek recovery of the matured installments and forfeiture of Manson's contract rights except in the alternative, leaving to Manson, in the event judgment be rendered against him, the right of election as to

whether he shall pay the amount due upon the unpaid matured installments or default therein and suffer forfeiture of his contract rights. It seems plain to us that the complaint is not defective to the prejudice of Manson in this respect.

It is contended in behalf of Manson that he successfully defended the action prosecuted against him by Doyle, upon the ground that the title to the three-foot strip claimed by Manson was in Foltz and wife by virtue of their and his adverse possession thereof for a period of more than ten years, and that therefore they did not have an unclouded record title to the three-foot strip in question. It does appear by the original formal pleadings in this action that Doyle prosecuted his action against Manson claiming the three-foot strip to be a part of lot 9 adjoining lot 8 on the south; and that Manson defended that action claiming that Foltz and wife, by their and his possession of the strip for more than ten years, had title thereto by adverse possession. However, the facts so appearing in the formal pleadings do not negative the finding No. 8, above quoted, made in this action, that it was adjudged in that action that the three-foot strip in question is in fact "a part of lot 8."

We must now presume that that question, as well as that of adverse possession, became, by amendment, an issue in the Doyle case under our liberal practice. So it does not here appear that either the actual or the record title of Foltz and wife to lot 8, including the three-foot strip in question, which has been adjudged a part thereof, is in the least defective. Indeed, Doyle made no claim to the three-foot strip other than as a part of lot 9 adjoining lot 8 on the south.

Contention is made in behalf of Manson that the court erred to his prejudice in sustaining a demurrer to his affirmative defense. The only manner

in which we are advised of any such demurrer being interposed, or of the court's disposition thereof, is a brief observation made by the court in its memorandum decision, which we find among the files but not made a part of the record by statements of facts, evidently rendered following the trial upon the merits of Manson's affirmative defense, and about a week before the making of its findings of fact and rendering judgment thereon on November 1, 1930. The court does in this paper tentatively express the opinion that "the demurrer to the affirmative defense should have been sustained." There is, however, no demurrer before us. Possibly, this refers to an oral demurrer to Manson's affirmative defense interposed and overruled at the time of the trial, of which, however, we have no record, there being no statement of facts here.

However, that opinion of the court, if we are to notice it at all, is only tentative. The whole cause and the proper disposition thereof were still within the breast of the court, until it finally made its findings of fact upon the evidence touching the merits of Manson's affirmative defense, and rendered judgment thereon a week later on November 1, 1930. *Quigley v. Barash,* 135 Wash. 338, 237 Pac. 732.

We conclude that the judgment must be affirmed. It is so ordered.

MITCHELL, J. (concurring)—I concur in the result reached in Judge Parker's opinion. All references therein, however, to the purported issues in a suit between Doyle and Manson concerning a strip three feet wide of lot 8, beyond what is mentioned in the findings of fact in this case, are immaterial and beyond any proper inquiry here, in my opinion. The findings of fact are clear, full and complete, and are presented here without any statement of facts. In paragraphs

8 and 9 of the findings, in referring to the strip involved in the suit of Doyle v. Manson, the court says that Manson prevailed in that suit by judgment to the effect that the strip was a part of lot 8; and that Manson had the right of possession and occupancy of the same as a part of the real estate mentioned in his contract with Foltz and wife; and that expenses incurred by Manson in that action were not caused by any defect in the title which Foltz and his wife agreed to convey to Manson.

Such finding is the equivalent of a verdict to that same effect. Section 368, Rem. Comp. Stat., says "the finding of the court upon the facts shall be deemed a verdict," and some of our decisions mentioning that rule are *Reynolds v. Dexter Horton & Co.*, 2 Wash. 185, 26 Pac. 221; *Gerhard v. Worrell*, 20 Wash. 492, 55 Pac. 625; *Colvin v. Clark*, 83 Wash. 376, 145 Pac. 419; *Fisher v. Coy Valve Co.*, 138 Wash. 35, 244 Pac. 125, 247 Pac. 966.

The case is brought here upon findings of fact that are, in legal effect, agreed to as stating the case for our decision, since no statement of facts is brought here, as though such findings were a verdict, having the force of a *special verdict*, as some of our cases say. The findings are clear and unambiguous and present but one question, viz: Do they sustain the judgment? Such has been our uniform practice, as stated in *Abbott v. Clebanck*, 158 Wash. 368, 290 Pac. 704, as follows:

" 'It is settled by a line of authorities so numerous that no citation of them is necessary that a case brought here on the findings of the court below without a statement of facts raises but one question, that is, whether the findings sustain the judgment.' *O'Brien v. Industrial Insurance Department*, 100 Wash. 674, 171 Pac. 1018."

In my opinion, reference to the decision in *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654, is not helpful in the consideration of the present action. That action was to recover damages for alleged breach of an executory real estate contract to convey by ''good and marketable title''—the suit being between the parties to the contract. In the present case, between parties to an executory real estate contract, one of them seeks to inject into the case one result of another action against him by a third party which was wholly without foundation, according to the unchallenged findings in the present case.

At the time of writing this, I have before me the dissenting opinion written by the chief justice, which contains a statement I respectfully refer to. It is the statement with reference to an admission claimed to have been made by counsel for respondent in a colloquy with one of the judges at the time of the oral argument of the case. I did not understand the answers given by counsel for the respondent to questions from the bench to be unqualified, or to the full extent claimed, and so stated to the judges upon the first formal opportunity after the colloquy. The statements were oral and not made a matter of record, as I understand, and should not be considered. Surely, a divergence of opinion as to something outside of the record is sufficient, of itself, to compel its being ignored in deciding the case.

Still further, if the new matter is immaterial, it should not, in my opinion, be considered. If it is material, which in my opinion it is not necessary to decide, it is so because it goes to the merits and affects the results of the case, and all the more, for that reason, should not be considered under the circumstances here. I confess it is a new proposition to me in appellate court practice, that should not be approved in my

opinion, to allow such an incident as the one in question to be considered as affecting the merits of the case for the purpose of cancelling and destroying the solemn findings and judgment of a superior court now powerless to be heard with reference thereto, all to the advantage of a litigant who has in no way provided by statute objected to those findings, and who presents to us on the appeal the sole question of whether the findings support the judgment.

HERMAN and MILLARD, JJ., concur with MITCHELL, J.

HOLCOMB, J. (concurring)—I concur in the views expressed by Judge Mitchell.

However, I wish to add that the minority view would disregard our statute, Rem. Comp. Stat., § 1752, prescribing our duty to "consider all amendments which could have been made, as made." This command we have followed with fair consistency since *Allend v. Spokane Falls & Northern Railway Co.*, 21 Wash. 324, 58 Pac. 244, to date, in cases tried by the court and by a court and jury. It has, also, been our uniform rule of practice that, in the absence of a statement of facts, it will be presumed that a pleading, if defective, was amended at the trial. *Greene v. National Surety Co.*, 140 Wash. 230, 248 Pac. 803; and, in the absence of a bill of exceptions or statement of facts, we are bound by the findings. *Elsom v. Tefft*, 140 Wash. 586, 250 Pac. 346.

TOLMAN, C. J. (dissenting)—In my judgment, the opinion of the majority is based upon two misconceptions.

The first is that it is erroneously held that the trial court found, as a matter of fact, that there was no defect in the vendor's title, and that the defendant (appellant here) has not been occasioned any loss by the assertion of title on the part of Doyle.

The second misconception is that this case is governed by the rule applicable to one who takes and holds under a warranty deed. Here no deed has yet been executed or delivered, but the vendee is in possession under a contract which, in legal effect, bound the vendor to convey a merchantable title.

Paragraph 8 of the findings of fact, as quoted by the majority, purports to give the legal effect of the judgment in another and independent cause, and, as construed by the majority, amounts to a modification of that judgment. Such a judgment cannot be attacked or modified in a collateral action. It was not attacked in this action. The force and effect of that judgment, as pleaded, was expressly admitted by respondents' answer to the cross-complaint.

Paragraph 9 of the so-called findings of fact, as quoted by the majority, is not a finding of fact at all, but is wholly a conclusion of law, and as such is not binding on this court. Omitting paragraph 9, the findings, as made by the trial court, can be seached in vain for any fact as to whether the vendor had a merchantable title of record or that Doyle's attack on the title to the extent of the strip involved was not defeated by a title resting in parol, i. e., adverse possession, and therefore not such a title as the vendee could be compelled to accept.

Admittedly, the findings are inadequate and incomplete, except as supplemented by the admissions contained in the pleadings. The general rule—and the wise rule— is:

"A finding contrary to facts admitted in the pleadings must be disregarded; and the judgment must follow such admissions." Sutherland on Code Pleading and Practice, § 1167.

Where we can see that all of the essential facts leading to a just result are admitted by the pleadings,

we ought not, through the application of any technical rule, to deny a just result and refuse to exercise our appellate jurisdiction. In any such case, we should either accept Sutherland's rule as above quoted or send the case back for further findings of fact. But, happily, in this case, we are not required to do either. In answer to a question from the bench during the oral argument of this case, counsel for the respondents consented and admitted that we could, and should, consider the admissions contained in the pleadings in this cause in reaching our decision. Among the facts so specifically admitted are the following:

"That in the latter part of December, 1928, said Joseph Doyle brought suit in the superior court of Pierce county, Washington, against defendant and the latter's mother, Janet M. Manson, alleging in his complaint that the three-foot strip aforesaid was a part of lot 9 of said allotment, and that he was the owner thereof, and that the defendants unlawfully withheld possession of said strip from him, and praying that the defendants be ejected from said strip of land, and that the plaintiff's title thereto should be quieted against any claim on the part of the defendants.

"That within a few days after service upon defendants of the summons in said action, defendant through his attorney notified the said Linnie M. Foltz by letter of the bringing of said action, and of the attack therein made upon her title to the strip aforesaid, and upon defendant's right to the possession thereof, and suggested that she appear in said action, and defend her title to said property, and thereby protect the defendant . . .

"That upon the refusal of the said Linnie M. Foltz to appear in said action, and defend her title against the claim of ownership asserted by said Doyle, defendant proceeded to make a vigorous defense to said action, and filed an answer therein in which he alleged that the grantor of said Linnie M. Foltz, the said Linnie M. Foltz and the defendant as vendee under his contract with said Linnie M. Foltz had held the

open, notorious, exclusive and adverse possession of said premises for such a length of time that title thereto, and to the strip aforesaid, had become vested in the said Linnie M. Foltz by adverse possession, and further alleged that the plaintiff was estopped by the acts of his grantor from claiming title to the said strip; that upon the hearing of said cause defendant introduced evidence from which the court found, as conclusions of law, that title to said strip had become vested in the said Linnie M. Foltz by adverse possession, and that the plaintiff was estopped from claiming title thereto; that a decree was entered in said action in accordance with said findings establishing the title to said strip in the said Linnie M. Foltz, quieting her title as against any claim on the part of the plaintiff, and establishing the right of the said defendant, William A. Manson, under his contract with the said Linnie M. Foltz, to the possession of said strip of land.''

In the last paragraph quoted, it is clearly alleged— and of course as clearly admitted—that, in the Doyle case, the

'' . . . defendant [the appellant here] introduced evidence from which the court found, as conclusions of law, that title to said strip had become vested in the said Linnie M. Foltz by adverse possession, and that the plaintiff [Doyle] was estopped from claiming title thereto; . . . ''

This conclusion by the court in the Doyle case, that respondent Foltz acquired title by adverse possession, excludes the possibility that, prior to that time, she had acquired title in any other manner, or that she had a title deducible of record; because, if she had had a title by deed, a title would thereby be vested in her and she could not thereafter acquire it by adverse possession. That conclusion by the court in the Doyle case is as complete and absolute as though the court had specifically determined that the record title was

in Doyle and that his record title had been divested by the adverse possession of Foltz.

We have here also admitted in the pleadings a copy of the executory contract under which appellant went into possession of the property; and that contract, by its terms and by the provision binding the grantor thereunder to furnish an abstract or title insurance showing title of record, in legal effect contains a covenant on the part of the grantor that she will, upon the performance of the conditions, convey a merchantable title.

It is well established law in this state, requiring the citation of no authority, that, where the seller's title rests in parol, it is not a merchantable title. He cannot compel a purchaser under such a contract as we have here to accept it. He may not, perhaps, ordinarily be required to perfect his title until the time comes for a conveyance; but when, as here, a third party attacks his title and the right of the vendee to possession, then, under the covenant to convey by merchantable title, as well as under the implied covenant for quiet and peaceable possession in the vendee, the vendor, when duly notified, as here, must assume the defense of his own title; and, failing to do that, the expense and damage arising from his failure to so defend are recoverable by the vendee or may be offset against the purchase price. Consequently, the rule as to one holding title under warranty deed has no application to the facts of this case.

In *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654, which the majority seems to consider out of harmony with other cases, this particular question was involved. In that case, the purchaser sought damages because his grantor could not convey a merchantable title in accordance with the terms of the executory contract. He was induced by certain representations to forego

the examination of abstracts, and to accept a warranty deed in advance of being supplied with evidence that his grantor had a merchantable title. In that case, the able attorneys who represented the party who would be adversely affected by the rule, admitted that the rule under an executory contract is as I have stated here, and that the title was still the title of the grantor until a deed was executed; but they claimed that the covenants of the executory contract became merged in the covenants of the warranty deed; and such is indeed the rule unless, as pointed out in that case, the purchaser is induced by fraud to accept the deed. Consequently, while the subject is not discussed because admitted, the *Parsons* case distinctly holds (1) that, under an executory contract for merchantable title, the purchaser cannot be compelled to accept a title resting in parol; (2) that, until the purchaser accepts a warranty deed, or after, if he is induced by fraud to accept such a deed, he may rely on and enforce the covenants of his executory contract.

The reason for the difference in the rules is very simple. One holding possession under an executory contract has no title, either legal or equitable. *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29. Consequently, if, while holding under his grantor's title, a suit such as the Doyle suit here be brought against him, he is called upon to defend not his own title, but the title which rests in his grantor; while, if the contract be executed by the delivery and acceptance of a warranty deed, then any attack made is made upon his title, and he must defend his own title from all unjust attacks, and may only recover upon the warranties if he be ousted by a superior title. The converse is equally true. So long as one situated as are the respondents here holds title to land which he has agreed to convey, he must defend all attacks upon his

title at his own expense. This the respondents refused to do when notified of the Doyle suit; and hence they are bound in law, as well as in all fairness, to reimburse the person who was compelled to defend their title for them. These propositions are fundamental law, recognized wherever the common law prevails, and require the citation of no authority.

Since every fact essential to a recovery of the reasonable disbursements made by the appellant in the Doyle case was admitted by the pleadings, save only the amount which was so reasonably and necessarily expended, the judgment of the trial court should be reversed, and the cause remanded with directions to determine the amount so expended by the appellant, to credit that amount upon the contract, and to enter judgment accordingly.

MAIN, BEALS, and BEELER, JJ., concur with TOLMAN, C. J.