[No. 25512. Department One. March 20, 1935.]

WILLIAM C. MANKE, *Respondent*, v. N. P. PETERSON *et al.*, *Appellants.*[1]

*Ray R. Greenwood,* for appellants.

*J. W. Bryan,* for respondent.

[1]Reported in 42 P. (2d) 39.

TOLMAN, J.—The cause of action here involved was first presented by a cross-complaint, but was tried separately by the court sitting without a jury, resulting in findings and conclusions favorable to the plaintiff in the cross-complaint and a judgment thereon from which the defendants Peterson have appealed.

The facts and issues can best be stated by quoting liberally from the findings and conclusions made by the trial court.

"(1) That on or about the 20th day of February, 1932, the said William C. Manke and the said N. P. Peterson, acting for and on behalf of himself and the marital community existing between himself and his said wife, Doris E. Peterson, negotiated between themselves an oral agreement whereby the said N. P. Peterson and Doris E. Peterson, his wife, agreed to sell to the said William C. Manke and the said William C. Manke agreed to buy for a consideration of $400 to be paid $100 down and the balance at the rate of $10 per month, such payment to include interest, the following described property, to-wit:

"E½ of Lot six (6), Lot Seven (7) and W½ of Lot Eight (8), in Block 4 of Union High School addition to Bremerton and Charleston, Kitsap County, Washington.

"(2) That thereafter the said N. P. Peterson drew up a writing in his own handwriting confirming the said agreement and delivered same to the said William C. Manke, in words and figures as follows, towit:

"'2/20/32

"'Received of W. M. (William) Manke, deposit of $20 on purchase price of 2 lots in U. H. School Addition, lots as follows:

"'E½ of Lot six (6) Lot 7 and W½ of Lot eight (8) in Block 4 of Union High School Addition to Bremerton and Charleston.        N. P. Peterson.

"'Suitable contract to be drawn up and arranged Feb. 24th.        N. P. Peterson.
Sales price $400.
Down payment to be $100.
Monthly payment, $10 including interest.'

"(3) That thereafter, the said N. P. Peterson paid on the said property in addition to the said down payment of $100, $70, making his payments total in the aggregate to $170, all of which was paid in accordance with the terms and conditions of the writing hereinbefore referred to.

"(4) That thereafter, very soon after February 20, 1933, the said N. P. Peterson procured two copies of a printed form contract for the sale of real property, the blanks in the said duplicate contracts were filled out in accordance with the said writing and by the terms of the said written contract the said N. P. Peterson and wife agreed and bound themselves to convey and sell to the said William C. Manke the said property on the terms and conditions hereinbefore set forth.

"(5) That the said written and printed contract, so drawn in duplicate, was left with the said N. P. Peterson; that it contained no provision as to the payment of taxes except that it required the defendant, William C. Manke, to pay all taxes accruing or to accrue subsequent to the date of the said purchase. It contained no reference whatsoever to any prior or unpaid taxes.

"(6) That the said written contract, left with the said N. P. Peterson, contained no clause as to any specific exemptions of the vendor from the payment of taxes or assessments or as to exemptions from warranty against past taxes; nor did the said contract contain any statement as to either party's liability as to taxes for prior years. That very soon after making the said down payment of $100 the said William C. Manke proceeded to purchase lumber and material to make excavations and to construct upon the said premises a residence.

"(7) That the said William C. Manke in order to assure himself that the title to the said property was in good condition and that he was in no danger of loss on account of defective title and that it was safe for him to proceed with the construction of the said residence on the said premises inquired of the said Peterson and was assured by the said N. P. Peterson several times, that the title was alright; that on the

strength of these assurances, Manke proceeded to construct his residence on the said premises.

"(8) That the said residence so constructed on the premises was within the contemplation of the parties at the time of the purchase of the said property and at all times during the making of payments thereon and the said N. P. Peterson knew that the said residence was being constructed on the premises and permitted him to proceed in the confidence that he would be given good title by Peterson when the payments were concluded.

"(9) That thereafter in pursuance to a tax sale foreclosure against the said premises, conducted in September, 1932, Fred C. Wyckoff, Treasurer of Kitsap County, made, executed and delivered on the 13th day of October, 1932, a deed conveying the said property, after due and regular proceedings to foreclose tax liens upon real estate to Alida Torstenson, who had duly purchased the said property in compliance with the laws of the state of Washington. That the said sale was in all respects conducted in the manner and form provided by law and the said property was bid off at public auction by the said Alida Torstenson on account of taxes accumulated and accrued for seven years prior to the date of the said sale. That by virtue of the said treasurer's tax deed, issued on the 13th day of October, 1932, the said Alida Torstenson immediately gave notice to the said William C. Manke, to vacate and surrender the said premises and thereafter brought this action against the said William C. Manke which resulted in a judgment of the court sustained the title of the said Alida Torstenson by virtue of the said tax deed from the treasurer of Kitsap County and ordered and commanded the said William C. Manke to vacate and surrender the premises, which said order was promptly complied with by the said Manke.

"That the said Manke had no notice or knowledge of said delinquent taxes or the said foreclosure and sale thereunder until he received the said written notice from the said Alida Torstenson as above set forth.

"(10) That the improvements upon the said prem-

ises were made at a cost and outlay by the said Manke for labor and materials in the sum of $1500.

.  .  .  .  .  .  .  .  .  .

"CONCLUSIONS OF LAW

"(1)  That by the terms of the said written agreements of sale and by virtue of the oral .agreements made and entered into between the parties, N. P. Peterson and the marital community existing between the said N. P. Peterson and Doris E. Peterson, his wife, became bound and obligated to convey by legal title to William C. Manke, the following described property, to-wit:

"E½ of Lot six (6), Lot 7 and W½ of Lot eight (8) in Block 4 of Union High School addition to Bremerton and Charleston, Kitsap County, Washington.

"(2)  That the defendant William C. Manke was thereafter evicted from the said premises in these proceedings wherein the said Peterson and wife were parties because of no fault of the said Manke but because of the fault and failure of the said N. P. Peterson and wife; that the said taxes accumulated and accrued against the property for six years prior to the said sale by Peterson were liens and incumbrances against the said property which the said Peterson and wife were legally obligated to pay.

"(3)  That the defendant, N. P. Peterson, did not deliberately set out to defraud the said Manke when he contracted to sell him the said property but the said Peterson was guilty of constructive or legal fraud in that he assured Manke not once, but several times, that the legal title was alright, when as a matter of fact, he did not know his said representations to be true.

"(4)  That the said Manke had no knowledge of the said accrued and over due taxes, and relied on the statements and assurances of the said Peterson and that he had a right to rely on the same and the said defendant vendors, Peterson and wife, are liable to the said Manke, both for the money paid on the contract in the sum of $170 and for the said improvements made by the vendees of the value and in the sum of $1500.

"(5)  That the said improvements were within the contemplation of the parties to the contract, the said

Manke having purchased the said premises for the purpose of erecting his said residence thereon and having so informed the said Peterson of his said purpose.

"(6) That the defendant is entitled to judgment for the said sums so expended including the said improvements and to interest on the said $170 at six per cent from the date of the sale; that is to say on the $100 of said sum from the 20th day of February, 1932, and $70 of the said sum from the first day of June, 1932, being the average date of the said seven $10 payments and interest on the said $1500 from the 13th day of October, 1932, the date of the deed by Fred C. Wyckoff, Treasurer of Kitsap County, conveying the said property to Alida Torstenson."

The facts, as found, do not seem to be questioned, and the errors assigned all relate to the conclusions.

■ Without reference to the sufficiency of the written contract, the facts found show a part performance amply sufficient to support this action. Under a parol contract, where the purchaser takes possession and makes permanent improvements, we have held that, because of such part performance, the statute of frauds does not apply. *Johnson v. Puget Mill Co.,* 28 Wash. 515, 68 Pac. 867; *Briggle v. Cox,* 72 Wash. 574, 131 Pac. 209.

■ Since both the written and the oral contract contemplated the conveyance of good title when the purchase money was paid, and there was no exception of the taxes, the purchaser was not bound to discover the unpaid taxes at his peril, but had the legal right to hold the seller to his duty to convey good title, free from tax liens, upon payment of the purchase price. The appellants were under a duty to protect and preserve their title during the life of the contract; or, at least, to have title and to be able to convey it when the time came for performance. The representation that they had good title, upon

which respondent relied in making the improvements, amounted to constructive fraud. *Henderson v. Miller,* 119 Wash. 362, 205 Pac. 1; *Dehnhoff v. Hege,* 131 Wash. 304, 230 Pac. 131; *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654.

█ The measure of damages would seem to be what was lost as a direct result of the wrong. The money paid on the purchase price, and also the money expended for permanent improvements in reliance upon the representations and upon the legal duty to convey, were all lost to the respondent because of the failure of the appellants to perform. The judgment restores only that which was lost as a direct result of the wrong. *Crawford v. Smith,* 127 Wash. 77, 219 Pac. 855.

The betterment rule referred to in the *Crawford* case can hardly apply where the benefits pass to and are acquired by a third party; but if it does apply, then the facts found supply ample ground for the reasonable inference that the property was bettered to the extent of the actual cost of the permanent improvements placed upon it.

█ The consideration was paid to and retained by the community. The husband in contracting to sell acted as the agent of the community. The wife at no time repudiated the contract, and at all times, apparently, she has sanctioned and approved of it. This is sufficient. *Washington State Bank v. Dickson,* 35 Wash. 641, 77 Pac. 1067, and cases there cited.

Finding no error, the judgment is affirmed.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.