[No. 9798.   Department One.   November 9, 1911.]

DAVID M. HOFFMAN *et al., Plaintiffs,* v. GEORGE L. DICKSON *et al., Defendants.*[1]

COVENANTS—INCUMBRANCES—COSTS—SUCCESSFUL DEFENSE OF AS-
SAULT ON TITLE.   Damages for a breach of a covenant against in-
cumbrances and warranting the title against all "lawful" claims,
cannot be recovered for attorney's fees and expense incurred in suc-
cessfully defending an action by third persons to foreclose a party-
wall lien which was decreed to be inferior to the title conveyed by
the deed of warranty.

JUDGMENT—BAR—MATTERS CONCLUDED — MATTERS NOT LITIGATED.
An adjudication that a lot was subject to a party-wall lien as against
defendants, who acquired title by mesne conveyances from a party
to the party-wall agreement, is not conclusive in a subsequent action
that the lien still exists or was enforcible as against the plaintiffs
acquiring the title from the defendants.

COVENANTS—INCUMBRANCES—DEFENSES—PARTY-WALL LIENS—OFF-
SET OF EASEMENT RIGHTS.   Where one-half of the cost of a party
wall was secured by the party-wall agreement as a lien upon the
lot, the same constitutes an incumbrance thereon and is a breach of
covenant against incumbrances, notwithstanding the owner of the
lot, upon payment of one-half of the cost, acquired a beneficial ease-
ment in the adjoining lot and party wall; hence it is no defense in
an action for breach of the covenant against incumbrances to allege
that the plaintiff had paid for the wall, constructed a building there-
on using the wall, and had derived benefits and advantages equal in
value to the cost and expense incurred; and the defendant is not
entitled to offset against the damages the value of the party-wall
easements acquired and used by the plaintiff.

Cross-appeals from a judgment of the superior court for
Pierce county, Easterday, J., entered July 12, 1911, upon
findings in favor of the plaintiffs upon one cause of action,
and dismissing another cause of action, after a trial on the
merits before the court without a jury, in an action for breach
of covenant.   Affirmed.

*Theo. D. Powell,* for plaintiffs.

*Johnston, McMenamin & Swindells,* for defendants.

[1]Reported in 118 Pac. 737.

PARKER, J.—The plaintiffs seek recovery of damages from the defendants for alleged breach of a covenant of warranty contained in a deed of conveyance from the defendants to the plaintiffs for lots 21 and 22, in block 1104, of New Tacoma, Washington Territory, now a part of the city of Tacoma. The grounds upon which relief is sought are set forth in the plaintiffs' complaint in two separate causes of action. The first relates to the title to lot 21, and the second relates to the title to lot 22. The questions here presented arise upon the rulings of the trial court in sustaining the defendants' demurrer to the plaintiffs' first cause of action, and the sustaining of the plaintiffs' demurrer to the defendants' affirmative defense to the plaintiffs' second cause of action. The parties stood upon these pleadings and declined to plead further. The trial court thereupon dismissed the plaintiffs' first cause of action, and also dismissed the defendants' affirmative defense, and proceeded to the trial of the plaintiffs' second cause of action upon issues raised only by the denials made by the defendants. Findings and judgment followed in favor of plaintiffs upon their second cause of action. The plaintiffs have appealed from the rulings sustaining the demurrer to and dismissing their first cause of action. The defendants have appealed from the rulings sustaining the demurrer to and dismissing their affirmative defense. We will notice these appeals in this order.

The facts stated in the plaintiffs' first cause of action which are necessary for us to notice are in substance as follows: In April, 1906, the plaintiffs commenced an action in the superior court for Pierce county against the defendants for specific performance of a contract, wherein they agreed to convey to the plaintiffs lots 21 and 22 in consideration of $75,000. In that action the plaintiffs prayed, among other things, that a just deduction from the purchase price be made on account of an encumbrance against lot 21, which they alleged was created by a certain party wall agreement; and one of the questions at issue in that action was whether or not that agree-

ment constituted a lien upon lot 21 to secure the payment of
one-half the cost of the party wall constructed in pursuance
thereof upon the line between lots 21 and 20 to the north
thereof. The defendants appeared in that action, and a trial
thereof resulted in findings and judgment determining that
that agreement constituted a lien upon lot 21 as contended by
the plaintiffs, which judgment, however, denied the deduction
prayed for, though it decreed specific conveyance of the prop-
erty. Thereafter both the plaintiffs and the defendants ap-
pealed from that judgment to this court, where it was deter-
mined that the party wall agreement constituted a lien upon
lot 21 for one-half the cost of the wall, but that said encum-
brance could not then be removed, and affirmed the judgment
of the superior court. By that judgment the defendants were
required to specifically perform their agreement and to convey
the property to the plaintiffs by deed containing general cov-
enants of warranty. Thereafter, in January, 1908, the de-
fendants, upon payment of the consideration of $75,000, con-
veyed to the plaintiffs the property, covenanting as follows:

"That they are the owners in fee simple of said.premises,
and that they are free from all incumbrances, and that they
will warrant and defend the title thereto against all lawful
claims whatsoever."

The party wall having been constructed some time previous
to the making of the agreement to convey and the convey-
ance made in pursuance thereof, thereafter, in October, 1908,
the one-half of the cost of the wall, secured to be paid to one
Hawkes, the owner of lot 20 and the party to said agree-
ment who constructed the wall, became due and payable
under the terms of that agreement. Thereafter, in October,
1908, Hawkes commenced, in the superior court for Pierce
county against the plaintiffs, a suit to foreclose his lien on
lot 21 for one-half the cost of the wall. Thereupon the
plaintiffs notified the defendants of the pendency of that ac-
tion and requested them to defend the same, which defendants
neglected and refused to do. The plaintiffs employed counsel

and defended the action, and upon trial in the superior court, judgment of foreclosure was rendered subjecting lot 21 and the plaintiffs' interest therein to the lien created by the party-wall agreement for one-half the cost of the wall, amounting to $1,630.66 and interest, and sale thereof was decreed accordingly. The plaintiffs thereupon appealed from that judgment to this court, and upon hearing thereof, this court in all respects reversed that judgment. These plaintiffs necessarily paid out in the defense of that action in the superior court, and in prosecuting the appeal therefrom in this court, for attorney's fees and other necessary expenses, the sum of $524.99, for which they pray judgment against the defendants.

No claim is made that the plaintiffs paid out any sum to extinguish the lien. Indeed, the facts pleaded show that the litigation in which they incurred this expense finally resulted in their favor, and adjudicated their title to be superior to and free from the lien of the party-wall agreement. Whether their title was so freed from this lien because of want of notice thereof to them or some grantee under mesne conveyance from Hawkes, or was so freed from the lien because of discharge thereof before the commencement of this action by some one other than the plaintiffs, does not appear by the facts stated in their first cause of action. This, however, we think is not material, since the application of some well-settled principles of law will show that it is enough to defeat the plaintiffs' recovery in this case to know that their title was superior to, and not encumbered by, the lien of the party-wall agreement at the time of the commencement of this action, and that they incurred no expense in removing such lien.

The facts alleged clearly show that the plaintiffs are here attempting to recover upon the covenant of warranty, alleging damages consisting only of expenses incurred in successfully defending an unlawful claim made against *their title* to lot 21. Counsel for the plaintiffs has called our attention

to several decisions in support of the general rule that ex-
penses incurred by a grantee under covenants of warranty,
in the defense of an action assailing his title, are an element
of damages recoverable against the grantor, as well as dam-
age resulting from loss or impairment of title.    Such was the
holding of this court in *Potvin v. Blasher,* 9 Wash. 460, 37
Pac. 710.    That decision, however, as well as all others relied
upon by counsel for the plaintiffs, involved incumbrances or
titles superior to that of the grantor which actually impaired
the title of the grantee.    We have seen that the defendants
only agreed to warrant and defend the title "against all lawful
claims."    We have also seen that the claim of lien, made
against the plaintiffs in the suit in which they incurred these
expenses, was not a lawful claim against the plaintiffs' title.
Under such circumstances, the rule seems to be well settled
that no recovery can be had against the grantor upon his
covenant of warranty.    Indeed, it seems inconceivable that
the unsuccessful assertion of an unlawful claim should con-
stitute a breach of a covenant of warranty to defend against
*lawful claims.*    We find in the case of *Smith v. Parsons,* 33
W. Va. 644, 11 S. E. 68, remarks of the court peculiarly ap-
plicable to this state of facts, as follows:

"It is true that Smith, in his sale to Parsons, stipulated for
a conveyance with general warranty, but the ejectment re-
sulted in favor of the title sold by Smith, and showed that it
was the paramount title.    A covenant of general warranty
is not broken until there is an eviction under a paramount
title, or what is equivalent.    *Rex. v. Creel,* 22 W. Va. 373; 2
Minor, Inst. 643; 2 Lomax, Dig. 355; 2 Rob. Pr. (New) 87;
2 Suth. Dam. 279; Rawle, Cov. Secs. 127, 131; *Yancey v.
Lewis,* 4 Hen. & M. 390.    Why then should Smith pay costs
expended in defending this action?    He sold a good and valid
title, as shown by the result of the action of ejectment, and
did no wrong in so doing, and by no reasonable view can it
be claimed that he was to stand good for expenses in defense
of assaults by inferior title.    He did not warrant that no
one should ever sue Parsons for the land, or in any manner
bind himself to refund expenses incurred in defending the

land against any one who might think he had a valid claim
to the land, and bring a suit for it.   Had Parsons lost the
land, then Smith, upon his covenant, would have been bound
for the land lost, and costs expended in an unsuccessful de-
fense of the title.   *Threlkeld v. Fitzhugh,* 2 Leigh 451; 2
Suth. Dam. 302; Rawle, Cov. Sec. 197.   But the covenantee
is clearly not entitled to demand of the covenantor expenses
in defending a suit which sustains the title as valid, for the
covenant does not bind for any outlays necessitated by the
simple existence or assertion of an adverse claim.   The cov-
enant does not protect against any but lawful claims, which
negative the title that the deed purports to convey."

See, also, *Norton v. Schmucker,* 83 Tex. 212, 18 S. W. 720;
*West v. Masson,* 67 Cal. 169, 7 Pac. 452; *Rittmaster v.
Richner,* 14 Colo. App. 361, 60 Pac. 189.   No decisions have
come to our attention holding contrary to this view, and we
think there are none such.

Counsel for appellants insists that the question of the
party-wall agreement being a lien upon lot 21 was settled ad-
versely to the defendants in the specific performance suit, and
thereby became *res adjudicata,* estopping the defendants to
now assert to the contrary.   Conceding, for argument's sake,
that the facts pleaded in the plaintiffs' first cause of action
show an established lien upon lot 21 by the judgment in the
specific performance suit, as against the defendants, it by no
means follows that such a lien existed, or continued to exist,
as against the plaintiffs, or that the title they acquired from
the defendants was not freed from the lien before the com-
mencement of this action.   That was the real question at is-
sue, and determined finally in the plaintiffs' favor in the suit
in which they incurred the expense which they now seek to re-
cover from the defendants upon their covenant of warranty.
The question here concerning us is not the bald question of
what kind of title the defendants possessed, or as to what ex-
tent it was burdened with liens.   But the question now is,
What kind of title did the plaintiffs acquire?   Was it a good
title?   Was it free from this lien?

It is easy to see how lot 21 might be subject to the lien as against the defendants or others holding mesne conveyance from Hawkes, who was the owner entering into the party-wall agreement, and still be free from any such lien that could in the least impair the title acquired by the plaintiffs. And since it has been finally adjudicated that this lien did not exist as against the plaintiffs' title, and did not in the least impair the plaintiffs' title, it becomes quite immaterial as to what extent the title of the defendants and prior owners may have been burdened by such lien. We are of the opinion that the facts stated in the plaintiffs' first cause of action do not entitle them to any relief as against the defendants. It following that the sustaining of the demurrer to that cause of action was not error, and since they elected to stand thereon and not plead further, the order of dismissal was proper. That order is therefore affirmed.

The facts alleged in the plaintiffs' second cause of action need only be noticed sufficiently to render easily understood the defendants' affirmative defense thereto, since it is only the demurrer to that defense which is here involved. The allegations of this cause of action are of the same nature as the first cause of action, except they relate to the covenant of warranty of title to lot 22, contained in the same conveyance; to a party-wall agreement of the same nature, made by a prior owner of lot 22 with the owner of lot 23 adjoining upon the south, and a wall constructed upon the line of the lots in pursuance thereof; and to a judgment of foreclosure by which the plaintiffs were compelled to pay the lien upon lot 22, created by that agreement, for one-half the cost of the wall. The following allegations of the plaintiffs' affirmative defense will sufficiently show its nature:

"That the said party walls were so constructed that they could be used as the side walls of a building to be erected upon the said lots, and plaintiffs purchased said lots with the intention of building, and did build, on said lots a four-story brick building, and made use of the party wall situated upon lot twenty-one (21) to the full height of the four stories

thereof, without constructing any additional wall or support in connection therewith, and made use of the wall standing in part upon lot twenty-two (22) the full height of three stories without making any additional wall or support thereto, and erected on the top thereof a fourth story at an expense to them of $160.

"That these party walls as they stood at the time of the said purchase and conveyance as aforesaid, were erections of a permanent nature, having by the terms of the agreements under which they were constructed, mutual easements of support, obligatory upon the owners of the adjoining lots on which they stood, and were of such a nature and character that they could not be removed from said lots by the defendants herein, said easements running with the land. That the plaintiffs, by the construction of the said four-story building and their use of the said walls in which to insert the joists of said building, voluntarily accepted the benefits of and bound themselves to the burdens imposed by the dominant and servient easements created by the said party wall agreements, and the said benefits and burdens so imposed were mutually beneficial to the respective owners of said lands, the burdens being off-set by the benefits conferred.

"That should it be found by this court that the plaintiffs have paid the amount of the judgment mentioned and referred to in the plaintiffs' alleged second cause of action, and the costs connected therewith, and should the court further find that the plaintiffs have paid the amount of the judgment as set forth in paragraph nineteen of their alleged cause of action, and the amount of attorney and counsel fees and other charges and expenses as set forth in paragraph twenty, and that the same constitutes a reasonable charge against these answering defendants, defendants say that the existence of the said party walls and the existence of the said party wall agreements, taken as a whole, and the rights accruing to plaintiffs thereunder, conferred upon the plaintiffs benefits greatly in excess of the payment which they have been compelled to make by reason of the allegations contained in their amended complaint herein, and that notwithstanding the said payments so made by them (if the court should so find), there has not been any depreciation in value of the lands so purchased by the plaintiffs by reason of the said incumbrance, or by reason of the said alleged breach of covenant.

"That by the existence of the said party walls and their
right to make use of the same in the construction of their said
four-story building upon the said lots in question, of the size
and character required by the building ordinances of the
city of Tacoma in force at the time of the construction of
said building, and the other benefits conferred by the dominant
servitudes vested in them by the said party wall agreements,
the plaintiffs were enabled to save, and did save, a large
amount of money, greatly in excess of the amount of money
which they allege they had paid out by reason of the things
set forth in their amended complaint herein, and which may
be more specifically set forth as follows, to-wit: . . ."

This is the substance of the defense which the defendants
were precluded from making by the sustaining of the plain-
tiffs' demurrer thereto.

This branch of the controversy has to do only with the
question of the measure of damages. The contention of coun-
sel for the defendants is that they are entitled to have offset
against that part of plaintiffs' damage consisting of the pay-
ment they were compelled to make to free lot 22 from the
lien, the benefits resulting to the plaintiff by reason of the
easement acquired by them in lot 23 for the support of the
wall. This contention is rested upon the theory that when
the breach of a covenant of warranty consists of an encum-
brance in the nature of an easement which impairs the
grantee's title to the premises, and cannot be removed by him
as a matter of right by the payment of money, his damages
will be measured by the diminished value of the premises
thereby occasioned, and that if the easement be of such nature
that the owner of the premises acquired some benefit there-
from as owner of the premises, although it may also impair
his title, then that the value of such benefit, whatever it may
be, is to be offset against the diminished value of the premises
resulting from the existence of the easement encumbrance
considered only as impairing his title to the premises.

It is argued that the party wall constructed as here shown
results in mutual concurrent easements in favor of the owner

of each lot; that while the plaintiffs' lot is encumbered by this easement, there is indissolubly connected with such encumbrance a like easement upon the other lot for the support of the wall, resulting in a benefit which must be considered and allowed to the extent of its actual value as a set-off in measuring the damage resulting to the plaintiffs' lot by reason of the easement encumbrance upon it. It is not argued that the court can say, as a matter of law, that one equally balances the other so as to result in nominal damages only to the plaintiff; but that each shall be valued independently of the other and the plaintiffs' damages diminished accordingly. In support of this view, our attention is directed to the following authorities: 8 Am. & Eng. Ency. Law (2d ed.), 179; *Wetherbee v. Bennett,* 2 Allen 428; *Bronson v. Coffin,* 108 Mass. 175, 11 Am. Rep. 335; *Richmond v. Ames,* 164 Mass. 467, 41 N. E. 671; *Mitchell v. Stanley,* 44 Conn. 312; *Hubbard v. Norton,* 10 Conn. 422. None of these cited cases involved mutual easements for support of a party wall, nor do they involve a lien arising out of a party-wall agreement securing the payment of part of the cost of the wall. While their logic may lend support to the theory of counsel for plaintiffs if we should view the measure of damages entirely independent of the lien for the payment of one-half the costs of the wall, we do not think it follows that the lien is so connected with the easements that it cannot be considered apart from the mutual burdens and benefits flowing from each of the owners to the other solely by reason of the mutual easements.

The only authority relied upon by counsel for the plaintiffs as being directly in point is *Mackey v. Harmon,* 34 Minn. 168, 24 N. W. 702. It may be conceded that that decision lends support to counsel's contention. The party-wall agreement there involved seems to have been substantially the same as the one before us, except that one-half the cost of the wall was not secured by a lien upon the lot as in this case, but the use of the wall could be had only upon payment of one-half the cost thereof. In that case the trial court held that the

easements being mutually beneficial and compensating to the
respective owners, no such encumbrance was thereby created as
would constitute a breach of the covenant against encum-
brance.   Upon appeal the supreme court held that the ease-
ment upon the plaintiffs' lot did constitute an encumbrance
amounting to a breach of the covenant, and granted a new
trial for the purpose of ascertaining the plaintiffs' damages.
Touching the measure of damages, the court said only the fol-
lowing:

"This brings us to the question of damages.   The incum-
brance in this case, that is to say, the servitude to which
plaintiffs' land is subjected, has not been *removed,* and it is not
in the power of plaintiffs to force its removal, as it would be
if the incumbrance were a matured mortgage.   Only by the
*consent* of Hurlburt or his successors in interest can the servi-
tude be purchased in or in any way discharged.   The case is,
then, one in which the necessary measure of damages is com-
pensation for the depreciation in value of plaintiffs' land oc-
casioned by the incumbrance.   *Fagan v. Cadmus,* 46 N. J.
Law, 441.   The agreement between Hurlburt and Harmon
is to be read as a whole.   So read, while it confers upon Hurl-
burt's land an easement in plaintiffs' land, it in the same
breath confers upon plaintiffs' land a like and equal easement
in Hurlburt's land.   As respects actual damages, the plain-
tiffs are therefore entitled to such sum as will compensate them
for the depreciation in value of their land occasioned by the
agreement as a whole.   The question is, when Harmon exe-
cuted the deed to Mackey, how much less was plaintiffs' lot
worth with the mutual easements or servitudes created by the
agreement as a whole, than it would have been without them?
The plaintiffs are, of course, entitled to nominal damages, at
least, for the formal breach of the covenant against incum-
brances."

Limiting these observations of that learned court as appli-
cable only to the mutual easements in the respective lots for
the support of the wall, apart from the obligation to pay
one-half the cost thereof from one lot owner to the other, we
would have but little trouble in adopting this view of the law.
But when we come to consider the obligation of one lot owner

to pay to the other one-half the cost of the wall upon making use thereof, whether such obligation be secured by the right to withhold the use of the wall until paid for, as in that case, or by a lien upon the lot, as in this case, we are constrained to entertain a different view. We cannot escape the conclusion that such an obligation becomes an encumbrance upon the lot of such a nature that it is to be considered entirely apart from the mutual easement rights of the respective lot owners; that is, it is, in effect, a separate encumbrance, to be discharged only by the payment of money. We think this is particularly true in this case, since the easement rights of the parties did not depend upon the payment of one-half the cost of the wall; such payment being secured by a lien upon the lot, which was actually foreclosed as such. We are of the opinion that the defendants were not entitled to have the value of the party-wall easement rights acquired by the plaintiffs in lot 23 offset against the amount they were compelled to pay in the removal of this lien encumbrance, though they may have been entitled to have the value of such easement rights offset against the damage caused by the easement encumbrance upon their lot, which breached the defendants' covenant of warranty. It follows that the demurrer of the defendants' affirmative defense was properly sustained by the trial court. Other matters discussed by counsel need not be noticed by us, since they would in no event change the result.

The judgment is affirmed. Neither party will recover costs in this court.

DUNBAR, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.