[No. 8413–2–III.   Division Three.   March 24, 1988.]

DOUBLE L PROPERTIES, INC., ET AL, *Plaintiffs,* v. GARY J.
CRANDALL, ET AL, *Appellants,* VIEWMONT
PROPERTIES, ET AL,
*Respondents.*

*John Zeimantz,* for appellants.

*Dennis Lynch* and *Witherspoon, Kelley, Davenport & Toole,* for respondents.

McINTURFF, C.J.—Gary Crandall appeals the superior court's refusal to order his vendor, Viewmont Properties, to pay him attorney fees as damages for Viewmont's alleged breach of the covenant of seisin. He incurred the fees during his successful defense of a claim by Double L Properties, Inc., to approximately 10 acres of a parcel sold by Viewmont to Mr. Crandall. Viewmont cross–appeals from the portion of the judgment denying it attorney fees. It relies on a provision in the real estate contract which provides that the prevailing party is entitled to fees in actions arising out of the contract.

The Superior Court found on stipulated facts that Mr. Crandall purchased the property by virtue of a real estate contract dated December 31, 1980. Additionally, a statutory warranty deed was placed in escrow. The real estate contract provided:

> The Seller warrants and states that it is well seised of the property which is the subject of this contract and has good right, title and lawful authority to sell and convey the same. Further, the Seller herein has made a good and sufficient Deed conveying said property to the Buyers free and clear of all liens and encumbrances except for easements, restrictions and assessments of record.
>
> . . .
>
> In the event of any litigation arising out of this contract, the prevailing party shall be paid reasonable attorney fees and costs and disbursements relating thereto.

Double L Properties had constructed a fence along the south and west portions of Mr. Crandall's purchase, which encroached on approximately 10 acres. It was in existence, at least along the southern boundary, at the time the real estate contract was executed, and generally followed the path of an old fence then in disrepair which had been

erected by parties unknown. Although both Viewmont and Mr. Crandall were aware of the fence at the time of the sale, neither was aware that the fence constituted an encroachment. A survey conducted in December 1981 revealed the encroachment.

On June 5, 1985, Double L brought an action against Mr. Crandall, claiming the property by virtue of adverse possession, estoppel and establishment of boundary by common grantor. Mr. Crandall tendered defense of the action to Viewmont, claiming the right to indemnification. When Viewmont declined to defend, Mr. Crandall joined it as a party and cross–claimed against it. Mr. Crandall also counterclaimed against Double L seeking ejectment and quiet title.

Mr. Crandall moved for summary judgment against Double L. The Superior Court, in a memorandum opinion, ruled that Double L had failed to establish adverse possession for the statutorily required time period. The parties then agreed to a stipulated order of dismissal of all the claims except for the cross claims between Mr. Crandall and Viewmont for indemnification for attorney fees and costs.

Up to the time of the stipulated dismissal, Mr. Crandall had expended attorney fees of $8,993 and costs of $756.99, three–quarters of which were spent defending against the Double L claim. Subsequent to the dismissal, he incurred another $935 in attorney fees pursuing his claim against Viewmont. Viewmont spent $3,420.65 in costs and fees attributable to defending against the Double L claim and against Mr. Crandall's cross claim for indemnification. The Superior Court denied Mr. Crandall's claim for fees and costs, concluding:

2. [Viewmont's] duty to defend [Mr. Crandall's] title is limited solely to lawful, valid claims . . . which affect [his] title . . . and [his] right to indemnification for defense costs . . . arises only when a claim which would negate or affect that title is upheld. Since the claim of

the plaintiff [Double L Properties] has been dismissed, no valid, lawful claim exists.

3. [Viewmont] was seised of the property conveyed as record owner of said property, and once seisin is established in the owner of land, it continues until adverse possession is established, thereby dislodging the claim of seisin.

4. Absent any overt act on the part of [Viewmont], which is the proximate cause of [Double L's] claim, the burden is upon [Mr. Crandall] to establish paramount title in [Double L] in order to prevail.

5. [Mr. Crandall] has failed to establish paramount title in [Double L] since [its] claims have been dismissed.
. . .
7. [Mr. Crandall] has failed to prove any breach of warranty in the real estate contract or in the warranty deed.

The court also denied Viewmont's claim for fees.

Mr. Crandall contends Viewmont is responsible for his fees and costs because, *inter alia,* it breached its warranty of seisin.

As noted above, Viewmont promised in the real estate contract that it was "well seised" of the property. It also executed a statutory warranty deed to the land and delivered it to the designated escrow. Under RCW 64.04.030, the grantor who executes such a deed warrants:

(1) That at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he warrants to the grantee . . . the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, . . .

The first of these covenants, *i.e.,* the covenant of ownership in fee simple, is the covenant of seisin, and is broken the moment it is made if there can be no seisin by the grantee. *Whatcom Timber Co. v. Wright,* 102 Wash. 566, 567, 173 P. 724 (1918); *Wick v. Rea,* 54 Wash. 424, 428, 103 P. 462 (1909).

■■ "One can wade in the sea of adjudicated cases in order to discover what is meant by the word 'seisin' until he is totally submerged and lost." *Lakelands, Inc. v. Chippewa & Flambeau Imp. Co.,* 237 Wis. 326, 342, 295 N.W. 919, 926 (1941). The covenant of seisin has been described as a promise by the covenantor that is broken if he "has not the possession, the right of possession, and the complete legal title" of the conveyed property. 7 G. Thompson, *Real Property* § 3178, at 240 (1962). Possession may be either actual or constructive, *i.e.,* although the covenantor is not in actual possession, "he claims the right of exclusive occupation, and no person is in occupation opposing his claim." 1 H. Tiffany, *Real Property* § 20, at 27 (3d ed. 1939).

The court in *Lakelands,* at 342, concluded that:

[A]s [a] matter of common sense, . . . a covenant of a seisin implies that the covenantor is in possession of the land conveyed and all of it, and that if anyone is actually in possession claiming adversely to the covenantor, the covenant of seisin is broken, . . .

*See also Mellenthin v. Brantman,* 211 Minn. 336, 1 N.W.2d 141, 143 (1941). The court emphasized that a finding of breach of the covenant of seisin is not dependent on whether the adverse claim of the one actually in possession is lawful; an unlawful claim also works a disseisin. *Lakelands, Inc. v. Chippewa & Flambeau Imp. Co., supra. See also Williams v. Azar,* 47 So. 2d 624 (Fla. 1950); *Nelson v. Growers Ford Tractor Co.,* 282 So. 2d 664, 666 (Fla. Dist. Ct. App. 1973); *Lasswell Land & Lumber Co. v. Langdon,* 204 S.W. 812, 813 (Mo. Ct. App. 1918); 20 Am. Jur. 2d *Covenants* § 75, at 641 (1965). These same authorities hold that a grantee is entitled to recover from his grantor the necessary expenses of a suit prosecuted by the grantee to recover possession of property from an adverse claimant. *See also* Annot., *Liability of Grantor in Deed With Covenants, for Expense of Grantee's Successful Litigation With Third Party,* 105 A.L.R. 729, 737 (1936).

Viewmont argues that language in *Balch v. Smith,* 4 Wash. 497, 499, 30 P. 648 (1892) and *Hoyt v. Rothe,* 95

Wash. 369, 163 P. 925 (1917) indicates Washington sub-scribes to a different view.

The flaw in Viewmont's reliance on *Balch* is that *Balch* did not address the question of what constitutes a breach of the covenant of seisin; it was concerned with whether the wording of the statute then in effect governing the mainte-nance of actions for the recovery of real property required the plaintiff to allege *actual* possession of the premises within the statutory period. *Balch* held that the statute made no such requirement, stating, at page 499, that the rightful owner of real estate is presumed seised of the same, whether or not he is in actual possession, "until such pre-sumption is overcome by allegation and *proof* of adverse possession in some one else." (Italics ours.)

Viewmont would apply this language out of context to avoid liability for damages to Mr. Crandall. In light of the weight of authority from other jurisdictions that a finding of a breach of the covenant of seisin is not dependent on the success of the adverse claim, we decline to extend the cited language beyond the facts of *Balch*. *Balch*'s holding that an owner need not prove actual possession within the preceding 10 years in order to maintain an action for recovery of property is correct. Until the adverse claimant is in possession for the statutory time period, the owner's title is paramount and whether his possession was actual, constructive or nonexistent is immaterial for purposes of bringing an ejectment action. But it does not follow that a vendee must prove paramount title in the adverse possessor before the vendee can recover from the vendor for breach of the covenant of seisin. There, the nature of the vendor's possession is the material issue on which the question of breach hinges.

Nor is Viewmont aided by the court's holding in *Hoyt v. Rothe, supra*. There, a vendee alleged a breach of the cove-nant of seisin as a defense to its vendor's suit for the bal-ance due on the purchase price. Specifically, the fenced boundaries of the subject property enclosed less acreage than described in the deed, and the vendee's neighbor

refused to move his fence without a survey of the entire section. The court held, at page 373, that a vendee has three options when a part or all of land sold by a deed of general warranty is in the possession of another claiming title who refuses to quit on demand. The vendee may (1) rely on the covenant of seisin and rescind his contract; (2) affirm his contract and demand damages; or (3) in a suit by the vendor for the purchase price, counterclaim for the value of the property withheld. If he elects the third option, then he must prove paramount title in the adverse claimant. *Hoyt,* at 374.

Viewmont would extend *Hoyt's* holding to require a vendee to prove paramount title in the adverse claimant even where the vendee does *not* seek the value of the disputed land as damages. We refuse to do so. If a vendee seeks to reduce his purchase price for property, he should be put to the burden of proving that he acquired no title to the disputed portion. Without such a rule, a vendee could achieve a reduction in the price of the property and retain the possibility of proving his right to ownership and possession in a subsequent ejectment suit against the adverse claimant—in essence, obtaining a double recovery. The law wisely blocks this possibility by placing the burden of proving paramount title on the vendee when he seeks a reduction in the purchase price. But the reason for the rule in the one context fails when applied in other contexts. A vendee who successfully prosecutes an ejectment suit against an adverse claimant should be able to collect his costs in an action against his vendor for breach of the covenant of seisin. No possibility of a double recovery exists because in favorably resolving the dispute over possession, the vendee loses any argument that his purchase price should be reduced by the reasonable value of the disputed land.

Viewmont also relies on Washington cases which concern breaches of the covenant against encumbrances and the warranty of title. *Foltz v. Manson,* 164 Wash. 692, 4 P.2d 509 (1931); *Hoffman v. Dickson,* 65 Wash. 556, 118 P. 737

(1911); *Scott v. Woolard,* 12 Wn. App. 109, 529 P.2d 30 (1974). These cases make clear that a grantee is not entitled to attorney fees expended in the *successful* defense of third party *title* claims. The rationale is that in such a situation there is no breach of covenant of title which may serve as a basis for the recovery of damages of any kind. Annot., 105 A.L.R. at 731. If the third party's claim is invalid, then the grantor's warranty of title has not been breached. *But if at the time of sale anyone is actually in possession of land claiming adversely to the covenantor, the covenant of seisin is broken no matter whether the claim is lawful or unlawful.*[1] *See Lakelands, Inc. v. Chippewa & Flambeau Imp. Co., supra.*

Accordingly, we hold that a vendor breaches the covenant of seisin if, at the time of sale, an adverse claimant is actually in possession of all or a portion of the land conveyed, whether his claim is rightful or wrongful. Further, a vendee who successfully ejects such a claimant is entitled to recover from his vendor his expenses of ejectment, provided he gave prior notice to his vendor and demanded that the vendor prosecute the action.

Next, we apply this holding to the conclusions of law entered by the Superior Court. Those conclusions are set out earlier in this opinion, and are based on the incorrect premise that Mr. Crandall had to establish paramount title in Double L to prevail against Viewmont for damages for breach of the covenant of seisin.

Do the parties' stipulated facts and the court's findings based thereon establish that at the time of Viewmont's sale to Mr. Crandall, Double L was an adverse claimant actually

---

[1] In oral argument, counsel for Viewmont argued that damages for breach of the covenant of seisin must be limited to *successful* third party claims, otherwise vendors would be liable anytime anyone chose to challenge a vendee's title. However, the covenant of seisin is broken, if at all, when it is made. *See Whatcom Timber Co. v. Wright, supra,* and *Wick v. Rea, supra.* It promises that *at the time of the sale,* the vendor has possession of the property. A third party claim made by one who was not in possession at the time of sale does not relate to the covenant of seisin.

in possession of a portion of the land conveyed?[2] We answer "yes".

■ In *Chaplin v. Sanders,* 100 Wn.2d 853, 860–61, 676 P.2d 431 (1984), the court held:

The "hostility/claim of right" element of adverse possession requires only that the claimant treat the land as his own as against the world throughout the statutory period. The nature of his possession will be determined solely on the basis of the manner in which he treats the property. His subjective belief regarding his true interest in the land and his intent to dispossess or not dispossess another is irrelevant to this determination. *Cf.* RCW 7.28.070 and 7.28.080.[3]

---

[2]Viewmont answers "no" and points to the Superior Court's memorandum opinion of November 25, 1986, which states:

It has been held . . . that once seisin is established in the owner of land, it continues until adverse possession is established, thereby dislodging the claim of seisin.

Following that reasoning, then the burden is upon the defendant Crandall to establish lack of seisin in this particular instance.

There is a factual issue as to whether or not Crandall . . . has established a lack of seisin in Viewmont. This is based upon the following:

(1) The fact that at the time of purchase the land was not completely, but only partially fenced;

(2) That as to possession *by the grantor* there is no evidence in the record concerning the nature of any possession other than the implication that the Double L Properties implied an intent to occupy. There is no showing of construction, use or other evidence concerning possession;

(3) The doctrine of seisin is an old common law doctrine and is not, in many instances, particularly applicable to present transactions. Seisin requires both title and possession, but a contract purchaser does not get title under our system of conveyances until the contract is paid. In this instance he did not even get the deed.

While it can be argued that a contract purchaser has certain rights in the land short of actual record title pursuant to the contract, the defendant Crandall has not established sufficiently his right to claim seisin . . .

We note the Superior Court premised this analysis by citing the language from *Balch v. Smith, supra,* which we have held does not apply to breach of seisin cases; *i.e.,* that once seisin is established in the owner of land, it continues until adverse possession is established. The validity of the court's analysis is negated by the reference to the language in *Balch.*

[3]Thus, Viewmont's reliance in oral argument on Mr. Crandall's affidavit to the effect that Double L's agent had offered to purchase the property from him when the survey revealed Double L's encroachment relates to Double L's subjective

(Footnote omitted.)

In *Heriot v. Smith*, 35 Wn. App. 496, 504, 668 P.2d 589 (1983), the court stated:

"[W]hat constitutes possession or occupancy of property for purposes of adverse possession necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Frolund v. Frankland,* 71 Wn.2d 812, 817, 431 P.2d 188 (1967); *Howard v. Kunto,* 3 Wn. App. 393, 477 P.2d 210 (1970). Accordingly, the claimant need only demonstrate use of the same character that a true owner might make of the property considering its nature and location. *Frolund v. Frankland, supra.*

Here, the stipulated facts establish that prior to the sale, Double L had constructed, without Viewmont's permission, a partial fence that encroached on Viewmont's property. This act demonstrates "use of the same character that a true owner might make of the property", *Heriot,* at 504, and is sufficient to establish Double L was actually in possession and claiming adversely at the time of the sale. Thus, Viewmont breached its covenant of seisin, and Mr. Crandall is entitled to his attorney fees incurred in defense of Double L's action and in his counterclaim against Double L for ejectment. Under the prevailing party clause of his contract with Viewmont, he is also entitled to attorney fees incurred in his cross claim against Viewmont and in the appeal from the judgment on that cross claim.

Accordingly, we hold the Superior Court should have awarded Mr. Crandall $8,247.49 in attorney fees and costs.[4]

As for Mr. Crandall's request for attorney fees incurred post judgment and on appeal, he has filed an affidavit pursuant to RAP 18.1(c) detailing fees of $1,785 and costs of

intent and is not relevant to a determination of Double L's "hostility/claim of right" with respect to the property.

[4]$7,312.49 represents three–quarters of Mr. Crandall's attorney fees and costs up to the point of the stipulated dismissal; and $935 represents his attorney fees incurred pursuing his claim against Viewmont after the dismissal of Double L.

$222.28. We have reviewed the affidavit, and we hold these amounts are reasonable. Thus, Mr. Crandall is awarded an additional $2,007.28 in fees and costs post judgment and on appeal.

Our holding makes it unnecessary for us to reach Viewmont's cross appeal.

The judgment of the Superior Court is reversed. Judgment should be entered for Mr. Crandall for $10,254.77.

MUNSON and THOMPSON, JJ., concur.