# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JEFFREY T. ROWE and
REBECCA L. ROWE, husband and
wife and the marital community
comprised thereof,

        Respondents,

        v.

JOEL K. KLEIN and KAREN L. KLEIN,
husband and wife and the marital
community comprised thereof,

        Defendants.

JEFFREY T. ROWE and
REBECCA L. ROWE, husband and
wife and the marital community
comprised thereof,

        Respondents,

        v.

TRENT R. ADAMS and
MELISSA J. ADAMS, husband and
wife and the marital community
comprised thereof,

        Petitioners,

No. 74724-0-I

DIVISION ONE

PUBLISHED OPINION

FILED: January 29, 2018

SPEARMAN, J. — A statutory warranty deed includes both present and future covenants. The present covenants guarantee conditions at the time the deed is executed. These covenants are breached, if at all, at conveyance. The future

covenants protect a buyer's future right to the land. These covenants are generally breached after conveyance, when a third party asserts a claim to the property.

Jeffrey and Rebecca Rowe (Rowe) bought property from Trent and Melissa Adams (Adams) via statutory warranty deed in 2008. In 2014, a neighbor, Klein, sought to quiet title in a portion of the property by adverse possession. Six years and three months after Rowe bought the land, he sued Adams for breach of warranties and covenants. Adams moved to dismiss on the theory that Rowe's claims were barred by the six year statute of limitations. The trial court denied Adams' motion to dismiss but certified for review, the question of when the statute of limitations began to run.

The statute of limitations on the covenant of seisin, a present covenant, began to run at conveyance, because a present covenant, if breached at all, is breached at the time of conveyance.[1] The statute of limitations on the warranty to defend, a future covenant, began to run when Adams refused Rowe's tender of defense. The statute of limitations on the warranty of quiet possession, the other future covenant, began to run when Rowe was actually or constructively evicted from the land claimed by Klein.

The trial court erred in denying Adams' motion to dismiss as to the present covenants. The trial court did not err in denying Adams' motion to dismiss the claim

---

[1] The warranty against encumbrances is also a present covenant which is breached, if at all, at the time it is made. Ensberg v. Nelson, 178 Wn. App. 879, 886, 320 P.3d 97 (2013) (citing Moore v. Gillingham, 22 Wn.2d 655, 661, 157 P.2d 598 (1945)). This warranty guarantees that no third party has a right to, or interest in, the real property such as a lien or easement. Id. at 887 (citing Hebb v. Severson, 32 Wn.2d 159, 167, 201 P.2d 156 (1948)).

Neither party addresses the warranty against encumbrances. Any cause of action for breach of this warranty accrued at conveyance and was time barred when Rowe filed his complaint.

for breach of the warranty to defend. As to the warranty of quiet possession, the trial court did not err in denying Adams' motion to dismiss except as to that portion of the land occupied by Klein's greenhouse at the time of conveyance.

## FACTS

Rowe bought lot 4 from Adams in August 2008 by statutory warranty deed. Lot 4 is adjacent to and south of lot 3, the Klein property. The boundary between lots 3 and 4 is about 140 feet long and runs from east to west.

The 10 foot strip on the northern boundary of lot 4 has patches of grass, cedar trees, rhododendrons, and blackberry bushes. Part of the area is a leach field for a septic system. Towards the front of the lots, a crushed rock parking strip on lot 3 abuts the surveyed boundary line. At the back of the lots, a greenhouse on lot 3 extends over the property line. About 10 feet south of the boundary, on lot 4, a chain link fence runs from east to west for about 30 feet. The fence is attached to Rowe's back porch. Rowe believed the fence was part of a previous owner's dog run.

Rowe had lot 4 surveyed in 2010. The survey showed that Klein's greenhouse encroached onto lot 4. Klein's parking strip was on lot 3, but vehicles parked on the strip encroached a few feet onto Rowe's property.

Rowe intended to terrace the northern boundary of lot 4 and began this work in 2013. Klein objected. Klein asserted that he had maintained the northern 10 feet of lot 4 as his own since buying lot 3 in 1974. Klein contended the chain link fence marked the property line.

In 2014, Rowe filed a complaint to eject Klein and quiet title. Klein counterclaimed for adverse possession. Klein asserted that he had exclusively

possessed and maintained the property from 1974 to 1984 and had thus acquired the land by adverse possession before either Adams or Rowe bought lot 4. Because his claim to the property was based on his possession from 1974 to 1984, Klein argued that he had no burden to show that he continued to hold the property after 1984 and any evidence of how the property was used after 1984 was irrelevant. The trial court granted Klein's motion for summary judgment and quieted title in him.

In July 2014, while the action with Klein was in progress, Rowe tendered defense of Klein's adverse possession claim to Adams. Adams did not respond and in December 2014, Rowe filed a third party complaint asserting breach of the covenants of seisin, encumbrances, quiet possession, and the covenant to defend.

Adams moved to dismiss under CR 12(c), asserting that Rowe's claims were time barred. Adams contended the statute of limitations on the covenants in the warranty deed began to run at conveyance. Rowe opposed the motion and asserted that the statute of limitations did not begin to run until Klein established paramount title.

Although Adams' motion to dismiss presented a purely legal issue, the court recited the underlying facts for context. The court stated that, at the time of conveyance, neither Adams nor Rowe was aware that Klein had adversely possessed a portion of lot 4. The court ruled that the statute of limitations did not begin to run until Klein perfected title in the disputed land and, thus, Rowe's claims were not time barred. The court denied Adams' motion to dismiss.

4

The trial court denied Adams' motion for reconsideration but granted his motion to certify the question of when the statute of limitations began to run. This court granted discretionary review.

## DISCUSSION

The question before us is when the statute of limitations for breaches of the warranties in a statutory deed begins to run. Certified questions are questions of law that we review de novo. Allen v. Dameron, 187 Wn.2d 692, 701, 389 P.3d 487 (2017). We also review the trial court's ruling on a motion to dismiss de novo. Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). A motion to dismiss should only be granted "if it appears beyond a reasonable doubt that no facts exist that would justify recovery." Id. This is the case when "'there is some insuperable bar to relief.'" Id. (quoting Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

The statute of limitations begins to run when a cause of action accrues. 1000 Virginia Ltd. Partnership v. Vertecs Corp., 158 Wn.2d 566, 575, 146 P.3d 423 (2006) (citing RCW 4.16.005). A cause of action accrues when a party has the right to apply to a court for relief. Id. Claims for breach of a statutory warranty accrue when the warranty is breached. Erickson v. Chase, 156 Wn. App. 151, 157, 231 P.3d 1261 (2010) (citing Whatcom Timber Co. v. Wright, 102 Wash. 566, 568, 173 P. 724 (1918)).

A statutory warranty deed provides five guarantees against title defects:

> '(1) that the grantor was seised of an estate in fee simple (warranty of seisin); (2) that he had a good right to convey that estate (warranty of right to convey); (3) that title was free of encumbrances (warranty

5

against encumbrances); (4) that the grantee, his heirs and assigns, will have quiet possession (warranty of quiet possession); and (5) that the grantor will defend the grantee's title (warranty to defend).'

Mastro v. Kumakichi Corp., 90 Wn. App. 157, 162, 951 P.2d 817 (1998) (quoting 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 7.2, at 447 (1995)). Rowe's complaint asserted that Adams breached each of these except the warranty of right to convey.

Rowe first asserts that Adams breached the warranty of seisin. The warranty of seisin is also known as the covenant of ownership in fee simple. Double L. Properties, Inc., v. Crandall, 51 Wn. App. 149, 152, 751 P.2d 1208 (1988) (citing Whatcom Timber, 102 Wash. at 567). This covenant guarantees that the grantor is lawfully seized of an indefeasible estate in fee simple in the described property. Id. at 152 (citing RCW 64.04.030). The warranty of seisin is a present covenant and is broken the moment it is made if the grantor does not have the possession, right of possession, and complete legal title of the property. Id. A grantor has possession if he claims the right of exclusive occupation and no third party opposing his claim is occupying the land. Id. at 153 (citing 1 H. Tiffany, Real Property § 20, at 27 (3d ed. 1939)). See also Mastro, 90 Wn. App. at 163 (discussing the warranty of seisin).

This warranty was at issue in Double L. Properties. In that case, at the time the seller conveyed acreage to the buyer, a neighbor was occupying about 10 acres of the property. Double L. Properties, 51 Wn. App. at 150. The buyer successfully ejected the neighbor and brought an action against the seller for indemnification. Id. As to the warranty of seisin, the issue was whether a seller breaches the warranty

6

when a third party asserts a claim to the property or only when a third party asserts a valid claim that actually affects title. Id. at 152-53.

In the circumstances of Double L. Properties, that question was resolved by possession. Id. at 156. The warranty of seisin guarantees that the seller has possession of the land, that is, that he claims the right of exclusive occupation and no third party opposing his claim is occupying the land. Id. at 153. Where, as in Double L. Properties, a third party is occupying the land at the time of sale "the covenant of seisin is broken no matter whether the claim is lawful or unlawful." Id. at 156 (citing Lakelands, Inc., v. Chippewa & Flambeau Improvement Co., 237 Wis. 326, 295 N.W. 919, 926 (1941)).

Relying on Double L. Properties, Adams asserts that the warranty of seisin was breached at conveyance, the statute of limitations began to run at that time, and Rowe's claim was time barred.

Rowe attempts to distinguish Double L. Properties on the grounds that Klein's possession at the time of conveyance was not evident. Rowe contends that, when he bought lot 4, he asserted possession of the entire lot and his possession was not disturbed until Klein asserted his adverse claim in 2014.

Rowe's argument fails because the warranty of seisin guarantees that, at conveyance, the seller has possession, right of possession, and complete legal title to the property. Double L. Properties, 51 Wn. App. at 153. In Double L. Properties, the warranty was breached because, at conveyance, a third party was occupying a portion of the property, so that the seller did not have possession. In this case, Klein established superior title to the disputed land through adverse possession from 1974

7

to 1984. Thus, regardless of occupation at the time Adams conveyed lot 4 to Rowe in 2008, Adams did not have complete legal title. The warranty of seisin was breached at conveyance and the statute of limitations began to run at that time.

Unlike the warranty of seisin and the warranty against encumbrances, the warranty of quiet possession is a future covenant that runs with the land. McDonald v. Ward, 99 Wash. 354, 358, 169 P. 851 (1918) (citing West Coast Mfg. & Inv. Co. v. West Coast Improvement Co., 25 Wash. 627, 643, 66 P. 97 1901). The warranty of quiet possession is alternatively known as the warranty of quiet enjoyment, the covenant of warranty, or the general warranty. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 14.3 (2004). See West Coast at 25 Wash. at 643 (covenant of warranty and covenant of quiet enjoyment are identical). This covenant "warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession" of the property conveyed. RCW 64.04.030. It is an "assurance by the grantor that the grantee and the grantee's heirs and assigns shall enjoy [the land] without interruption by virtue of paramount title, and that they shall not, by force of a paramount title and that they shall not, by force of a paramount title, be evicted from the land or deprived of its possession." Foley v. Smith, 14 Wn. App. 285, 290-91, 539 P.2d 874 (1975) (citing 20 Am.Jur.2d Covenants, Conditions, & Restrictions s 50 (1965)).

The warranty of quiet possession is breached when the buyer of land is actually or constructively evicted by one who holds a paramount title that existed at the time of the conveyance. Id. at 291. What constitutes evidence of actual or constructive eviction varies according to the circumstances. Id. (citing West Coast

8

Mfg., 25 Wash. at 643). Where a third party with superior title is in possession at the time of conveyance so that the buyer cannot take possession, the buyer is constructively evicted at conveyance. McDonald, 99 Wash. at 358-59 (buyer was constructively evicted from land occupied by a railroad track at conveyance).

The Washington Supreme Court considered the warranty of quiet possession in two cases decided in 1918. In McDonald, a buyer bought land that included a stretch of railroad track. McDonald, 99 Wash. at 354-55. A line of telegraph poles ran parallel to the track at a distance of about 40 feet. Id. at 359. For several years, the buyer cultivated all of the land except for a strip about 20 feet wide where the track was located. Id. at 355. The railroad later asserted superior title to a strip of land 200 feet wide. Id.

In the buyer's action against the seller for breach of warranty, the statute of limitations was at issue. Id. To determine when the limitations period began to run, the McDonald court considered when the buyer was evicted from various portions of the property. Id. at 358. The buyer conceded that he had been constructively evicted from the 20 foot strip where the track was located at the time of conveyance. Id. at 358-59. The McDonald court held that the buyer had also been constructively evicted from the land between the telegraph poles and the track at conveyance. Id. at 359. Although the buyer had cultivated this land, the telegraph line was incidental to the railroad track and essential to the track's operation. Id. The railroad possessed the track, the telegraph poles, and the land between them. Id. As to the remaining land, the buyer was not evicted until the railroad asserted its title. Id. The buyer's

9

claim against the seller was limited to damages for the loss of this last portion of land. Id.

A few months after McDonald, the Supreme Court revisited the warranty of quiet possession in Whatcom Timber. In that case, the seller conveyed two tracts of land to the buyer by warranty deed. Whatcom Timber, 102 Wash. at 566-67. The seller did not actually own the land. Id. at 568. At the time of conveyance, the land was owned by the United States and was in the possession of third parties. Id. at 567. These third parties prevented the buyer, whose deed was null, from taking possession. Id. at 568. Several years later, the third parties prevailed in actions to quiet title. Id. at 567.

In the later action against the seller for breach of the warranty of quiet possession, the issue was when the statute of limitations began to run. Id. at 568. In the circumstances of that case, where third parties with paramount title prevented the buyer from taking possession, the Whatcom Timber court held that the warranty was breached at conveyance. Id. "If, at the time the deed is executed the premises are in the possession of third persons claiming under a superior title and grantee cannot be put into possession, the covenant of warranty is broken when made, without any further acts of the parties." Id.

Adams contends this case is like Whatcom Timber. He asserts that Klein had paramount title to the disputed land and Klein's possession of the land was beyond dispute. Rowe contends that he asserted possession of the entire lot at conveyance and his possession was not disturbed until Klein asserted his adverse claim in 2014.

10

Klein prevailed in his adverse possession claim. It has thus been established that Klein had paramount title. But the trial court's order quieting title in Klein does not establish that Klein occupied the disputed land in 2008 and prevented Rowe from taking possession. Klein's adverse possession claim expressly rested on his occupation of the land from 1974 to 1984. In support of his motion for summary judgment, Klein argued that he was not required to continue to hold the property in an adverse manner after 1984. Thus, Klein argued, any evidence relating to use of the land after 1984 was irrelevant. By granting Klein's motion for summary judgment, the trial court accepted Klein's argument. The court did not rule on whether Klein occupied the land in 2008. Notably, the trial court stated that, at conveyance in 2008, neither Adams nor Rowe was aware of Klein's adverse possession.

In determining when the statute of limitations on Rowe's claim for breach of the warranty of quiet possession commenced, the dispositive question is whether, when Adams conveyed lot 4 to Rowe in 2008, Klein possessed the disputed land so that Rowe was unable to take possession. Whatcom Timber provides no guidance because, in that case, possession sufficient to exclude the buyer was undisputed. McDonald, however, is instructive.

In McDonald, the court considered when the buyer was ejected from the disputed property for purposes of commencing the statute of limitations. McDonald, 99 Wash. at 358-59. The court appears to have taken into account the extent to which it was apparent to a reasonable person that the property was occupied by the railroad company. Id. at 359. The buyer, of course, could not dispute his knowledge of the railroad's claim to the property occupied by the railroad track and conceded

11

that the statute commenced at the time of conveyance as to that portion of the property. Id. Accordingly, his claim as to that portion of the property was time barred. Id.

As to the disputed property, however, the court distinguished the property between the track and the telegraph poles from the remaining property claimed by the railroad. Id. It concluded that, as to the former, the buyer should be held, as a matter of law, to have been evicted from the property from the time of conveyance. Id. The court reasoned that because the telegraph line was incidental to the track of the railway company, and was essential to the operation of the railroad, it would have been readily apparent to a reasonable person that the property between the track and the telegraph poles was occupied by the railroad. Id. Thus, the statute commenced to run "at the time he received his deed." Id. But because there was no similar indication that the railroad occupied the property beyond the telegraph poles, the statute of limitations did not commence on that property until the railroad company began legal action to oust the buyer. Id.

In this case, Adams asserts that Klein's possession was evident. He first relies on Klein's greenhouse, which encroached onto lot 4 at the time Rowe bought the property. Like the railroad track in McDonald, Klein's greenhouse existed at the time of conveyance and occupied a portion of the land so that the buyer could not take possession. Rowe was constructively evicted from the land occupied by the greenhouse at conveyance and the statute of limitations commenced to run at that time. Thus, Rowe's claim as to this portion of the land is time barred.

12

Adams asserts, however, that Rowe was also constructively evicted from the remainder of the land claimed by Klein. He contends Klein's possession of this land was evident because Klein had the leach field inspected every few years, cars parked on Klein's parking strip encroached over the property boundary, and Klein stated that he maintained a lawn.

Unlike the telegraph poles in McDonald, this evidence would not put a reasonable person on notice of another party's superior claim. Telegraph poles are permanent structures. The telegraph line was incidental to the railroad track and essential to the railroad's operation. The occasional inspection of the leach field, the parked cars, and the patches of lawn in this case are not permanent structures incidental to some obvious use. The record indicates that, other than the greenhouse, Klein's possession of the land was not such that Rowe was constructively evicted at conveyance. Klein's position supports this conclusion. In his adverse possession claim, Klein expressly declined to argue that he continued to occupy the land after 1984. Notably, the trial court's finding that in 2008 neither Adams nor Rowe was aware of Klein's adverse possession is consistent with this position.

We conclude that, although Klein's adverse possession from 1974 to 1984 established superior title to the land, his occupation of the land in 2008 was not such that it prevented Rowe from taking occupation. Other than that land occupied by the greenhouse, Rowe was not constructively evicted until Klein asserted his superior title in 2014. Thus, as to the remainder of the disputed land, the limitations period did

not begin to run until Klein asserted his superior claim in 2014. Rowe's claim is not time barred.

Rowe's final claim is for breach of the warranty to defend. Like the warranty of quiet possession, the warranty to defend is a future warranty. Erickson, 156 Wn. App. at 158 (citing Mastro, 90 Wn. App. at 164). It guarantees that no lawful, outstanding claim against the property exists. Id. To establish breach of the warranty and the right to recover, a buyer must show that (1) a third party has asserted a superior right to the property; (2) the buyer has tendered defense to the seller; and (3) the seller has refused the tender. Id. at 158-59. The breach occurs when the seller refuses the tender of defense. Id. at 158; Mastro, 90 Wn. App. at 166 (the seller breached the warranty by refusing tender of defense).

Adams asserts, however, that the warranty to defend is breached at the same time as the warranty of quiet enjoyment. At oral argument, he argued that the warranty to defend is a subtype of the warranty of quiet possession. Adams' argument rests on the McDonald court's statement that the warranty of quiet possession, which the court refers to as the "general warranty," guarantees that the "'covenantor ... will defend and protect the covenantee against the rightful claims of all persons.'" McDonald, 99 Wash. at 358 (quoting 7 Ruling Case Law, 1144).

Adams takes this sentence out of context. The sentence is part of the McDonald court's discussion of the warranty of quiet possession. The warranty to defend was not at issue in that case. Where Washington courts have considered breach of the warranty to defend, they have consistently held that the warranty is breached when the seller refuses the buyer's tender of defense. See Edmonson v.

14

Popchoi, 172 Wn.2d 272, 279, 256 P.3d 1223 (2011) ("the warranty to defend means that, upon proper tender, a grantor is obligated to defend in good faith and is liable for breach of that duty."); Erickson, 156 Wn. App. at 158; Mastro, 90 Wn. App. at 164-66.

In this case, it is undisputed that Rowe tendered defense to Adams in 2014 and Adams refused to defend. The warranty to defend was breached in 2014. This claim was not barred by the statute of limitations.

To summarize, the statute of limitations began to run on the present covenants, the covenant of seisin and the covenant against encumbrances, at conveyance. Rowe's claims for breaches of those covenants were time barred. As to these two claims, the trial court erred in denying Adams' motion to dismiss.

The warranty of quiet possession was breached when Rowe was actually or constructively evicted. Rowe was evicted from that portion of the land occupied by the greenhouse at conveyance, as Klein's possession prevented Rowe from taking possession. As to that portion of the land, Rowe's claim was time barred and the trial court erred in denying Adams' motion to dismiss. As to the remainder of the land, Klein's possession was not such that it prevented Rowe from taking possession. Other than the land occupied by the greenhouse, Rowe's claim for breach of the warranty of quiet possession did not accrue until Klein asserted his superior claim in 2014. The claim was not time barred and the trial court properly denied Adams' motion to dismiss.

15

The warranty to defend was breached when Adams refused Rowe's tender of defense in 2014. This claim was not time barred and the trial court did not err in denying Adams' motion to dismiss the claim.

Reversed in part and affirmed in part.[2]

WE CONCUR:

_Spellman, J._

_Leach, J._

_Schindler, J._

---

[2] We deny Adams' request for attorney fees on appeal. Adams requests fees under the doctrine of mutuality of remedy, which provides that, when one party would be entitled to receive attorney fees if it prevails, the opposing party is likewise entitled to fees if it prevails. Fairway Estates Ass'n of Apartment Owners v. Unknown Heris, Devisees of Young, 172 Wn. App. 168, 182, 289 P.3d 675 (2012) (citing Kaintz v. PLG, Inc., 147 Wn. App. 782, 789, 197, P.3d 710 (2008)). Adams concedes, however, that attorney fees incurred in deed warranty litigation are not recoverable. Because neither party is entitled to fees, the doctrine of mutuality of remedy is inapplicable.